SPOHN HOSPITAL, et al., Petitioner,

v.

Karen MAYER, et al., Respondent.

No. 02–0443.

Supreme Court of Texas.

April 24, 2003.

Ben A. Donnell, M.W. Meredith, Jr., Clay E. Coalson, Meredith Donnell & Abernethy, Corpus Christi, for petitioner.

William R. Edwards, III, John Blaise Gsanger, William R. Edwards, The Edwards Law Firm, Michael G. Terry, Hartline Dacus Barger Dreyer & Kern, LLP, Corpus Christi, for respondent.

PER CURIAM.

In this medical negligence case, the parties appealed portions of the trial court's judgment following a jury trial. The jury found the defendant Spohn Health System Corporation d/b/a Spohn Hospital liable and awarded damages to the plaintiffs, Karen Mayer and Sandra Hilbrich, individually and as representatives of the estate of their deceased father, Raymond Hilbrich. Spohn argued on appeal that the trial court abused its discretion in awarding pre-judgment interest such that the damages award exceeded the limits of the statutory cap and in ordering as discovery sanctions that certain facts be taken as true at trial. Mayer and Hilbrich asserted on appeal that the *Stowers* doctrine made the statutory cap limiting the damages award in medical negligence cases inapplicable. The court of appeals did not reach plaintiffs' statutory cap argument, reversed the award of pre-judgment interest, and affirmed the judgment as modified. 72 S.W.3d 52, 69. All parties petitioned for review.

We decide only the discovery issues in this opinion,[1] and hold that the sanctions imposed by the trial court do not comport with the standards we established in *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex.1991). We further conclude that the trial court's abuse of discretion in ordering these sanctions probably caused the rendition of an improper judgment. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court.

Plaintiffs Mayer and Hilbrich alleged that the negligence of Spohn's staff resulted in the death of their father. Mr. Hilbrich was admitted to Spohn on August 1, 1995. He was 86 years old, suffering from

---

1. We dismiss as moot Mayer and Hilbrich's petition for review of the statutory cap issue simultaneously with the issuance of this opinion.

heart problems, and experiencing confusion and disorientation. On August 3, a nurse observed Mr. Hilbrich attempting to get out of his hospital bed for the third time. In response, Spohn moved him to the telemetry floor of the hospital in a room that was near the nurses' station. On the telemetry floor, he was able to call for a nurse by pressing a button that activated a call light at the nurses' station, and he was fitted with a medical monitoring device that relayed his vital signs to a monitoring station near the nurses' station. A telemetry technician at the monitoring station kept track of the patient's vital signs and was to notify the medical staff of any noteworthy changes in these signs. As a further precaution, Mr. Hilbrich was restrained with a Posey vest, which is a cloth device designed to limit a patient's ability to get out of bed.

Gary Schmidt, the telemetry technician on duty at the hospital the night of August 4, 1995, noted in his witness statement that Mr. Hilbrich made four calls after 11:00 p.m. requesting a nurse's assistance. Schmidt further indicated that the nursing staff did not respond to the calls. The evidence established that at approximately 12:01 a.m., Mr. Hilbrich's telemetry monitor indicated that he was suffering from ventricular fibrillation. A nurse ran to Mr. Hilbrich's room and found him beside his bed with the Posey vest caught on the bed and wrapped around his neck. The nurse removed the vest to free Mr. Hilbrich, but, despite resuscitation efforts, he was pronounced dead a short time later.

Mayer and Hilbrich sued Spohn on August 31, 1995. While preparing for trial, Spohn interviewed and took written statements from Schmidt, Aurora Silva, and some of the other nurses who had been on duty while Mr. Hilbrich was in the hospital. In April 1999, the plaintiffs propounded requests for disclosure on Spohn, including a request for disclosure of witness statements, as provided in Texas Rules of Civil Procedure 192.3(h). ("A party may obtain discovery of the statement of any person with knowledge of relevant facts—a 'witness statement'—regardless of when the statement was made.") In June 1999, Spohn responded to the request for witness statements by producing the statements of two nurses. Spohn did not produce the statements of Schmidt, Aurora Silva, a nurse on duty the night Mr. Hilbrich died, or two other nurses, but stated in its response that documents were being withheld based on the attorney work-product doctrine. Mayer and Hilbrich threatened to file a motion to compel, but never did. On December 10, 1999, 31 days before trial, Spohn voluntarily produced the statements of Schmidt, Silva, and the two other nurses. At that time, Spohn stated that it had withheld the statements believing them to be exempt from discovery but that recent case law had convinced Spohn that the statements were now discoverable.

Mayer and Hilbrich moved for sanctions, arguing that Schmidt's and Silva's written statements had a direct bearing on the issue of breach of the standard of care and that Spohn's late production of the statements prejudiced the plaintiffs' case.

Schmidt's witness statement indicated that immediately prior to Mr. Hilbrich's death, Mr. Hilbrich called for a nurse four times. Schmidt stated that he either informed the nurses of each call, or had a nurse's aide inform them, but the nurses ignored the calls. Plaintiffs called Schmidt as a witness at the sanctions hearing, and his testimony was generally consistent with his written statement.

Silva's witness statement concerned her actions the night of Mr. Hilbrich's death. When these events occurred, she was acting as the charge nurse, or the supervisor, of the 3:00 p.m. to 11:00 p.m. shift. She

gave the instructions to move Mr. Hilbrich to a room near the nurses' station and place him in the Posey vest. In her statement she says that it "never occurred to her" that "she had not written the physicians' order" regarding the Posey vest restraint in Mr. Hilbrich's medical charts. Her statement did not say that Mr. Hilbrich was placed in the restraint without a physician's order. Silva testified at trial, but Schmidt did not.

The trial court granted the plaintiffs' motion for sanctions and ordered that facts in Schmidt's and Silva's written statements be taken as established, pursuant to Rule 215.2(b)(3).[2] The court instructed the jury, pursuant to its order of January 6, 2000, that:

> [T]he following facts are to be taken as established in this case: Number one, that immediately prior to midnight on the date of his death, Raymond Hilbrich made four requests for assistance using the nurse's call button, spaced five minutes apart, each of which was noted and each of which was ignored by the nursing staff; and, two, Raymond Hilbrich was placed in the Posey vest, a physical restraint, without physician's order, either written or telephonic.

At trial, in response to questioning by the plaintiffs, Spohn's nurses acknowledged that a failure to answer four calls from a patient would violate the standard of care. Spohn filed two bills of exceptions containing testimony from two other nurses on duty the night of Mr. Hilbrich's death. The two nurses would have testified that Schmidt never called them, contrary to his statement and to the court's instruction. Spohn contends that the

nurses could not have appeared at trial to contradict the statements because the jury was required to take Schmidt's testimony as true.

There was also evidence presented at trial from a representative of the Posey vest manufacturer and from a legend on the package for the vest indicating that federal law requires a physician's order to use a Posey vest. Although the trial court instructed the jury that Mr. Hilbrich was restrained with a Posey vest without a physician's order, Mr. Hilbrich's treating physician testified at trial that he approved the decision to place Mr. Hilbrich in the restraint.

The jury returned a verdict for Mayer and Hilbrich and awarded damages, which, after the application of the cap on medical malpractice awards pursuant to the Medical Liability and Insurance Improvement Act,[3] totaled $1,369,000. Of that amount, the jury awarded $780,000 to Karen Mayer, $1,140,000 to Sandra Hilbrich, and $66,150 to Mr. Hilbrich's estate. The trial court added pre-judgment interest and rendered judgment on the jury's verdict. The court of appeals affirmed, but modified the judgment to exclude the award of pre-judgment interest. 72 S.W.3d at 69.

We consider whether the trial court abused its discretion in ordering the sanctions under Rule 215.2(b)(3) against Spohn.

The Rule states, in relevant part:

> (b) If a party ... fails to comply with proper discovery requests ... the court in which the action is pending may, after notice and hearing, make such orders in

---

**2.** The trial court's order does not cite the rule on which it based the sanction, but the parties agree that Rule 215.2(b)(3) is the applicable rule in this matter. Under this rule, the court is empowered to order that "designated facts shall be taken to be established for the pur-

poses of the action in accordance with the claim of the party obtaining the order."

**3.** Tex.Rev.Civ. Stat. Ann. art. 4590i, § 11.02(a) (Vernon 2003). The limit is adjusted based on fluctuations of the consumer price index. See id., § 11.04.

regard to the failure as are *just*, and among others the following:

. . . .

(3) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

TEX.R. CIV. P. 215.2(b)(3) (emphasis added). Paragraph (b) explicitly requires that any sanction under that rule be "just." In *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex.1991), we defined the requirements for discovery sanctions to be "just" under Rules 215(2)(b)(5) and 215(3), which were in effect at that time. Because the relevant language in the revised Rule 215.2(b) and in the prior Rule 215(2)(b) is identical, we apply the tenets of *TransAmerican*.

▆ *TransAmerican* set out a two-part test for determining whether a particular sanction is just. First, there must be a direct nexus among the offensive conduct, the offender, and the sanction imposed. *See TransAmerican*, 811 S.W.2d at 917. A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. *Id.* The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both. *Id.*

▆ Second, just sanctions must not be excessive. *Id.* In other words, a sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators. *Id.;* *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992). We require courts to consider less stringent sanctions and whether such lesser sanctions would fully

promote compliance. *TransAmerican*, 811 S.W.2d at 917; *Chrysler Corp.*, 841 S.W.2d at 849. We reiterate that "[c]ase determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993). This is not an exceptional case.

▆ Spohn contends that the sanctions imposed were not "just" because a direct nexus did not exist between the alleged offensive conduct and the sanctions. Spohn argues that the sanctions were not directed against the purported abuse and toward remedying any prejudice caused to the plaintiffs. Rather, Spohn asserts, the sanctions gave the plaintiffs an overwhelming and unwarranted advantage at trial by having crucial facts deemed established without offering any evidence in support of them. Mayer and Hilbrich argue that the sanctions were a just and measured response to the specific harm caused to an innocent party by Spohn's discovery abuse. They further assert that Spohn was not prevented from offering to the jury alternative explanations for Mr. Hilbrich's death. Mayer and Hilbrich contend that the sanctions order did not establish all the elements of their suit because other witnesses were required to testify that the conduct described in the established facts violated the applicable standard of care. Instead, Mayer and Hilbrich argue that the sanctions simply prevented the jury from rejecting the established facts.

We agree with Spohn that the trial court did not adhere to either prong of the *TransAmerican* test. The first prong requires a direct nexus among the conduct, the offender, and the sanction imposed. *TransAmerican*, 811 S.W.2d at 917. Although the sanctions were generally "di-

rected against" the alleged abuse, the record contains no evidence that the sanctions were "visited on the offender." In fact, neither the trial court nor the court of appeals discusses whether counsel or their clients were responsible for the discovery abuse.

The second prong of *TransAmerican* mandates that the trial court consider less stringent measures before settling on severe sanctions. *Id.; Chrysler Corp.,* 841 S.W.2d at 849. This Court has noted that the record should contain some explanation of the appropriateness of the sanctions imposed. *See Chrysler Corp.,* 841 S.W.2d at 852–53; *see also GTE Communications,* 856 S.W.2d at 729; *Otis Elevator Co. v. Parmelee,* 850 S.W.2d 179, 181 (Tex.1993). In this case, the record is silent regarding the consideration and effectiveness of less stringent sanctions.[4]

■ Discovery sanctions that are so severe as to inhibit presentation of the merits of a case should be reserved to address a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *TransAmerican,* 811 S.W.2d at 918. Sanctions such as the one imposed here are the type which inhibit the presentation of a party's claim. *See Braden v. Downey,* 811 S.W.2d 922, 929 (Tex.1991). The trial court's order states that the sanctions were imposed because of "Spohn's late production of witness statements in response to a Request

for Disclosure." This is insufficient to justify the severity of the sanctions imposed. They were excessive.

. Therefore, since the trial court did not comply with the required procedural and substantive standards in imposing sanctions, we hold that the trial court abused its discretion in ordering that the specified portions of the witness statements be taken as established facts at trial.

■ The trial court's abuse of discretion resulted in harmful error. The trial court instructed the jury to take the substance of the witness statements as established facts, and the jury was not at liberty to disbelieve them. The record in this case shows that the facts "established" by the court's order were quite effective before the jury and likely determinative. Before the presentation of evidence, the judge read the instructions from the order to the jury. Plaintiffs' counsel used the trial court's instruction during voir dire to question potential jurors on their ability to "accept" the court's instructions, during opening statement to emphasize that the hospital "failed in its duty" by ignoring Mr. Hilbrich when he called four times for help, during testimony of their expert to challenge the assertion that the hospital had met the standard of care, and during closing argument to assert that Spohn was inviting the jury to "violate the instructions that Her Honor" had given them.

---

4. For example, the trial court could have ordered a trial continuance to allow the witnesses to be deposed or re-deposed. In that scenario, Mayer and Hilbrich could have obtained the testimony in an admissible form for trial, and the trial court could have considered re-allocating the costs of the depositions. These and other measures could have been considered or utilized prior to, or perhaps in lieu of, the severe sanctions ordered. *See, e.g., Occidental Chem. Corp. v. Banales,* 907 S.W.2d 488, 490 (Tex.1995) (per curiam) (conditionally granting writ of mandamus vacating trial court's order compelling production of attorney's notes from interviews with witness as a remedy for discovery abuse because there was no showing why less severe sanctions—including ordering the examination of the witnesses—would not have cured the abuse); *In re Dynamic Health Inc.,* 32 S.W.3d 876, 885–86 (Tex.App.-Texarkana 2000, no pet.) (holding that trial court was warranted in imposing death penalty sanctions after finding that lesser sanctions imposed failed to compel compliance with discovery requests).

In addition, the court's instruction misstated facts from Silva's written statement. Silva did not indicate that no physician had given the order to restrain Mr. Hilbrich in a Posey vest. She simply stated that it "never occurred to her" that she had not written the physician's order. The trial court thus ordered the jury to accept an important fact in Silva's statement as true, when the fact was not in her statement at all.

Further, a review of the record reveals no other evidence admitted at trial regarding the specific events from Schmidt's statement that were the subject of the court's order. Rather, according to Spohn's bills of exceptions, two witnesses—both of whom were nurses on duty the night of Mr. Hilbrich's death—would have given testimony contrary to Schmidt's. Even if admitted, the jury would have been unable to believe the two nurses' testimony and also comply with the trial court's instruction to presume the veracity of the established facts. The statements at issue essentially proved that Spohn breached its duty to Mr. Hilbrich. We conclude that the instructions regarding the established facts "probably caused the rendition of an improper judgment." Tex.R.App. P. 61.1(a).

Accordingly, we grant Spohn's petition for review, and without hearing oral argument, reverse the court of appeals' judgment, order the trial court to vacate its order of January 6, 2000, and remand this case to the trial court for a new trial and further proceedings consistent with this opinion. See Tex.R.App. P. 59.1.