IN THE SUPREME COURT OF TEXAS














IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0557

════════════

 

Volkswagen of America, Inc.,
Petitioner,

 

v.

 

Andrew Ramirez, Sr., et al.,
Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District
of Texas

════════════════════════════════════════════════════

 

Argued
April 23, 2003

 

Chief Justice Jefferson, joined
by Justice O’Neill, dissenting.

 

The Court concludes that Cox’s testimony amounts
to “no more than a mere scintilla” of evidence on causation.  __ S.W.3d at __.  To the contrary, Cox testified that the Passat experienced a “catastrophic failure of the wheel
bearing assembly” while it was traveling in the eastbound lane of U.S. Highway
83, before the Passat entered the median.  He both tested and rejected Volkswagen’s
alternative theory — that damage to the wheel bearing assembly occurred after
the Passat’s collision with the Mustang.   Reasonable jurors could have accepted
Volkswagen’s theory and rejected Cox’s (as they did in the first trial), or
accepted Cox’s and rejected Volkswagen’s (as they did here), but unlike the
jury, this Court lacks constitutional authority to weigh conflicting evidence.  Accordingly, I respectfully dissent from the
Court’s rendition of judgment for Volkswagen.

I agree with the Court, however, that the trial
court erred in admitting the testimony of the unidentified witness, whose
deliberate steps to ensure his anonymity and calm demeanor throughout the
interview negate the trial court’s conclusion that this hearsay was admissible
under the excited utterance exception. 
Furthermore, that error probably caused the rendition of an improper
judgment.  I would accordingly reverse
the court of appeals’ judgment and remand the case to the trial court for a new
trial.

I

Cox’s
Testimony on Causation[1]

 

            Causation was a
hotly contested issue at trial.  The
Ramirez plaintiffs argued that a defective left-rear wheel bearing assembly
caused Sperling to lose control of her Passat, which crossed the median and collided with Guerra’s
Mustang.  In contrast, Volkswagen
contended that driver error, specifically Sperling’s
overreaction to the contact between her Passat and
the Camaro, triggered a chain of events that caused Sperling to lose control and cross the median.  To that end, Volkswagen asserted that the
left-rear wheel separation was not the cause of the accident, but the result of
the impact at the end of the accident sequence. 
Each party offered expert witness testimony to support their respective
causation theories.

Cox testified that defects in the Passat’s left-rear wheel bearing assembly caused an abrupt,
catastrophic bearing failure that occurred from the inside out when the car was
traveling in the eastbound lane of U.S. Highway 83.  He asserted that cracks in the bearing
assembly produced metal fragments that eventually became lodged within the
assembly, causing it to jam and disintegrate abruptly.  He contended that as the bearing assembly
came apart, pieces of it were ejected with force sufficient to knock off the
thrust washer and adjusting nut that held the wheel assembly intact.  Without the adjusting nut in place, the hub
and rotor moved outward until the rotor contacted the brake pads and induced a
retarding force, which led to erratic vehicle behavior and caused Sperling’s vehicle to enter the median.

Cox specifically testified regarding three vehicle
defects.  First, based on microscopic
tearing at the base of the threads in the adjustment nut, which holds the
bearing assembly intact, he contended that the nut was looser than it should
have been.  Second, based on false brinell marks on the rollers within the bearing assembly,
he concluded that the bearing assembly was damaged in transit because the car
was cinched down too tightly.  Third,
based on the presence of cracking and metal fragments in the bearing assembly,
Cox concluded that the metal in the assembly became embrittled
by temperature inconsistencies in the manufacturing process.  He testified that the embrittled
material structure led to cracks, which created steel bearing fragments that
were found embedded in the roller cage of the Passat,
trapped between the inner and outer races and embedded in the surface of the
rollers.  

The Court concludes that “Cox’s testimony that the
results of this defect would be consistent with erratic vehicle behavior
causing the driver to make a corrective steer and veer into the median is an
unsupported conclusion.”  __ S.W.3d at
__.  I submit, however, that the jury was
entitled to make the reasonable inference that the wheel bearing assembly’s
disintegration (which all agree would cause erratic vehicle behavior) was the
catalyst for the accident.  Cox
testified:

 

Q:  And in that failure
that occurs back here 500 feet or so, that’s when this explosion takes place
when the roller fragment . . . comes shooting out and does what it has to do,
correct?

 

A:  I can’t tell you the
number of feet.  I haven’t been involved in
the accident reconstruction.  But I can
tell you, you do have a catastrophic failure of the bearing which does, at that
point, take the nut off which holds the wheel intact and which then causes the
hub to start moving outward.  And as the
hub and rotor move outward, the rotor contacts the brake pads, which would then
induce a retarding force because of contact between the rotor and the brake
pads, which would certainly be consistent with why there is an unusual behavior
of the vehicle at that point in time.  

Now, where it occurs in the highway, I can’t tell you.  That’s Mr. Walker’s analysis.  But we do know that those facts of the failed
fastener assembly and the friction between the rotor and the brake pads would
certainly lead to an erratic vehicle behavior which would then cause the driver
to make a corrective steer.

 

The Court states that Cox cited
“no testimony, tests, skid marks, or other physical evidence to support []his
opinion.”  __ S.W.3d at __.  In fact, as the Court itself notes, Cox
testified on direct examination that the presence of grass mixed with the
grease in the hub could be explained only if the bearing failure occurred
before the vehicle went into the median. 
Id. at __.  Volkswagen itself elicited similar testimony:

 

Q: I don’t know if you were present in the courtroom when I
was talking with Mr. Walker, but we were looking at this diagram that Mr.
Walker brought in where we see the beginning of the marks here that the police
had indicated.  We talked about the car
leaving the eastbound lanes and going in the median, and I had a dialogue with
Mr. Walker about the fact that the failure had to occur back 528 feet or 564
feet from the point at which the Passat enters the
median.  Were you present for that
discussion?

 

A: Yes, I was.

 

. . . .

 

Q: Okay.  In other
words, back here in your opinion and his opinion, there was this sudden
catastrophic failure of the wheel bearing assembly, correct?

 

A: Sure.  It has to
happen before the vehicle goes into the median because we know from the grass
in the hub that’s your only opportunity to get the grass there.

 

Furthermore, Cox testified regarding additional
physical evidence of a bearing failure that occurred from the inside out prior
to impact (contrary to Volkswagen’s assertions):

 

Q:  Now, go ahead and
tell me about the time elements with the different parts now that we know what
those parts are, if you would.

 

A:  Okay.  We know from the physical evidence that there
are small fragments in the bearing that have been run over by the rollers.  Those fragments were being generated by the
bearing before it failed . . . .  

 

We have in this instance literally friction welded a piece of
debris onto rollers and pieces of the inner race.  So before everything comes apart, we have a
bearing that’s starting to disintegrate. 
It’s malfunctioning, which also is consistent with the grease becoming
black, because grease normally does not discolor in such a short time period. .
. .  

 

But yet the grease inside the cavity of the hub was coal
black, the bearings, and contained lots of these little fragments.  

 

That was part of what led up to the failure.  But we also had some damage in the bearings
that preexisted much of the operation life. 
What happened B

 

. . . .

 

Q:  What made those
[brake pad] markings?

 

A:  There’s only one
thing that could make those marks, and that’s from this rotor, the edge of this
rotor.  The brake is clamped.  And, again, it’s undisputed that the parking
brake was activated when the Volkswagen crashed frontally into the
Mustang.  So the brakes were activated at
that time, and this shows us the position of this rotor at that point in time.

 

. . . .

 

Q:  So this is the brake
pad only hitting the edge of the rotor because the rotor is off center?

 

A:  Right, when the
brake is activated.  And there’s only one
point in time when the brake is activated, and that’s at the point of the
frontal collision.  So that tells us
definitively that we have a broken rotor at the time of impact.

 

Q:  Does it tell you
whether or not the failure occurred before or after the time of impact?

 

A:  Yes.

 

Q:  Conclusively?

 

A:  Yes.

 

Q:  And what does it
tell you?

 

A:  It tells you that at
the time that the two vehicles collided, the wheel was already broken away.

 

. . . .

 

Q:  Is this a failure
inside‑out or outside forces in?

 

A:  This is an internal
failure where the bearing itself is starting to digest itself.

 

Q:  Is the wheel moving
when this is happening?

 

A:  Sure.  Because if the wheel is not moving, the
rollers aren’t going around the race, and so the rollers can’t roll over
anything.  So this has to be a rotational
event.

 

Q:  Does it happen
before or after the vehicles collide together?

 

A:  It has to occur
before.

 

While Cox’s causation testimony
is neither ironclad nor exhaustive, it is surely some evidence that the Passat’s bearing failure occurred in the eastbound lane,
contributed to Sperling’s loss of control, and
ultimately caused a catastrophic accident in the westbound lane.[2]  Whether the wheel separated completely in the
eastbound or westbound lanes is important but not dispositive;
indeed, the jury could have accepted Volkswagen’s theory that a total
separation occurred toward the end of the accident sequence, yet also accepted
Cox’s testimony that the bearing failure began a process in which the hub began
moving outward and eventually resulted in a total wheel separation in
the median (which explains grass in the wheel hub), immediately before the
collision in the westbound lane.  We are
supposed to indulge inferences in favor of the verdict, not against
it.  

Coastal Transport Co. v. Crown
Central Petroleum Corp., 136 S.W.3d 227, 231 (Tex.
2004), does not support the result the Court reaches today.  In that case, we concluded that an expert’s
testimony on gross negligence was conclusory on its
face.  Id.
at 233.  The sum total of testimony on
gross negligence in Coastal was as follows: 

 

Q: When viewed objectively from Coastal's
point of view at the time of the September ’93 incident, in your opinion, did Coastal’s failure to stop using probes that could have
[sensor failure] problems, did that involve a high degree of risk, considering
the probability and magnitude of the potential harm to others?A:
Yes, it did, very high.Q: In your opinion, did
Coastal have an actual subjective awareness of the risk involved in failing to
stop using probes that can have [sensor failure] problems?

 

A: Yes, again and again.

 

Q: And in your opinion, did Coastal nevertheless proceed with
conscious indifference to the rights, safety, or welfare of others?

 

A: That’s the only conclusion I can draw.

 

Id. at 231.  By equating Cox’s testimony here with the
paltry testimony at issue in Coastal, the Court sets a dangerous
precedent that threatens to fundamentally alter the nature of no-evidence
review.[3]


Rather than indulging every
reasonable inference in favor of the jury’s finding, the Court adopts a
contrary approach, tipping the scale in the opposite direction to dismiss as “conclusory” expert testimony that supports the
verdict.  This Court is constitutionally
bound to conduct only a legal — not factual — sufficiency review.[4]  See Tex. Const. art. V, § 6; Tex. Gov’t Code § 22.225(a); Herbert v.
Herbert, 754 S.W.2d 141, 143 (Tex. 1988); Hall v. Villarreal Dev. Corp.,
522 S.W.2d 195 (Tex. 1975).  While a jury
or court of appeals may find Cox’s testimony factually insufficient on
causation, it is at least some evidence. 
I therefore respectfully dissent from the Court’s rendition of judgment
for Volkswagen.

II

Unidentified Witness’s Testimony

 

The trial court admitted into
evidence an unidentified eyewitness’s assertions that the Passat
had a blown-out tire before it crossed the median.  I agree with section IIB of the Court’s
opinion, which concludes that the witness’s statements were not an excited
utterance and thus, were inadmissible hearsay. 
The videotaped testimony reveals that the witness’s first reaction was
one of self-interest; he agreed to the interview only if his identity was
concealed.  He was composed and
reflective when giving his statement.  I
therefore agree that the statement does not qualify as an excited utterance.

I write separately to address
whether the trial court’s erroneous admission of the witness’s testimony
amounted to harmful error requiring reversal.

A

Standard of Review

 

Whether to include or exclude
evidence is a matter committed to the trial court’s sound discretion.  Interstate Northborough P’ship v. State, 66 S.W.3d 213, 220 (Tex.
2001); Tex. Dep’t of Transp. v. Able, 35 S.W.3d 608, 617 (Tex.
2000).  “Erroneous admission of evidence
requires reversal only if the error probably 
(though not necessarily) resulted in [the rendition of] an improper  judgment.” 
Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex.
2004); see also Tex. R. App. P. 61.1(a); Interstate,
66 S.W.3d at 220.  To make this
determination, we review the entire record. 
Nissan, 145 S.W.3d at 144; Able, 35 S.W.3d at 617; City
of Brownsville v.
Alvarado, 897 S.W.2d 750, 753-54 (Tex.
1995).  We will not reverse a judgment
for erroneous rulings if, as the plaintiffs argue here, the evidence in
question is cumulative.  Interstate,
66 S.W.3d at 220; Able, 35 S.W.3d at 617-18.  

While it is clear that a judgment
should not be reversed for erroneous admission of evidence that is merely
cumulative, beyond that, determining whether the erroneous admission was
harmful “is more a matter of judgment than precise measurement.”  Nissan, 145 S.W.3d at 144; see also
Interstate, 66 S.W.3d at 220; Able, 35 S.W.3d at 617.  To make this judgment, we have looked to counsel’s
efforts to emphasize the evidence in question. 
See Nissan, 145 S.W.3d at 144; Spohn
Hosp. v. Mayer, 104 S.W.3d 878, 883-84 (Tex.
2003); Alvarado v. Farah Mfg. Co., Inc., 830
S.W.2d 911, 917 (Tex. 1992).  In addition, we have examined whether there
was contrary evidence that the improperly admitted evidence was calculated to
overcome.  See Nissan, 145
S.W.3d at 144; Spohn Hosp., 104 S.W.3d
at 884.  

B

Harmful Error Analysis

 

As noted above, the parties
vigorously disputed causation in this case. 
Whereas the plaintiffs contended that a defective bearing assembly led
to a catastrophic bearing failure that caused the accident, Volkswagen argued
that driver error caused the accident and that the bearing failure was the
result, not the cause, of the accident. 
The main dispute at trial centered around whether the bearing failure
occurred in the eastbound lanes, thereby causing the Passat
to enter the median and collide with the Mustang, or in the westbound lanes, as
a result of the impact at the end of the accident sequence.  

The trial court admitted into
evidence a local news crew’s videotaped interview of a witness at the accident
scene.  In the interview, the witness
stated: “The station wagon was headed from here toward over there and
apparently had a blown-out tire. . . . 
The tire blew up and it crossed the median and it hit the car that was
headed from over there toward over here.” 
The witness refused to identify himself and was never located or
deposed.  The court of appeals held that,
if the trial court committed error in admitting the witness’s testimony, the
error was harmless because the appellant did not show that the error probably
resulted in an improper judgment.  79
S.W.3d at 122.  I disagree.

The unidentified witness’s
testimony was not merely cumulative of other evidence in this case.  The witness’s statements constituted the only
disinterested, eyewitness account that the plaintiffs offered to support their
causation theory — that the bearing failure occurred at the beginning of the accident
sequence, thereby leading Sperling to lose control of
the Passat, which crossed the median and collided
with the Mustang.  Although Cox also
provided some evidence of causation, his testimony was derived not from direct
observation of the accident, but from post-accident analysis and testing.  Moreover, unlike the unidentified witness,
Cox conducted his research and formed his opinion solely for the purpose of
litigating this case.  See E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d
549, 559 (Tex. 1995) (A[O]pinions
formed solely for the purpose of testifying are more likely to be biased toward
a particular result.”); Nissan, 145 S.W.3d at 144 (noting that “we have
consistently required competent expert testimony and objective proof” in
product defect cases).  Finally, whereas
Volkswagen was able to challenge the credibility of Cox’s testimony through
cross-examination, it did not have the same opportunity with the unidentified
witness.  See Davidson v. Great Nat’l
Life Ins. Co., 737 S.W.2d 312, 314 (Tex.
1987) (ACross‑examination
is a safeguard essential to a fair trial and a cornerstone in the quest for
truth.”); State v. Hilton, 412 S.W.2d 41, 42-43 (Tex.
1967) (holding that error in denying cross-examination of witness was harmful
because witness was “the real supporting witness”).  

At trial, Plaintiffs’ counsel
repeatedly emphasized the importance of this evidence.  Counsel presented the evidence in three
forms: (i) the videotaped interview of the witness at
the scene of the accident; (ii) a transcript of the interview read to the jury;
and (iii) live testimony of the reporter who interviewed the unidentified
eyewitness.  In arguing for the admission
of the evidence, counsel asserted that the videotape containing the interview
was “a very important piece of evidence for the plaintiffs” and that
they were “only going to show the video clips of the evidence that [they] need[ed]
to prove their case.”  (Emphasis
added.)  They referred to the evidence in
their opening statement, and it was the first evidence presented at trial.  Most notably, plaintiffs’ counsel made the
following statements during closing argument:

 

We heard from an eyewitness, an eyewitness who gave some
testimony, testimony that hasn’t been controverted,
hasn’t been disputed in this case, hasn’t even been addressed.  It’s just kind of been ignored by
Volkswagen.  And what did that man
say?  That man told us very clearly, very
simply and very honestly . . . that what he saw from his position looked like a
blowout to him; that a tire blew out, a car went out of control, it skidded
across a median, it killed two girls and permanently damaged another one.  He has no ax to grind.  He has no beef with anybody.  He’s not being paid to say any of this.  He’s just an honest man giving an opinion, an
opinion that was captured on film and was given to you just minutes, minutes
after he experienced it.  

 

It wasn’t like he went back out to the scene to measure.  It wasn’t like he looked at a bunch of
photographs.  It wasn’t like he ran
hundreds of tests and lots of exhibits. 
He told you that just minutes after he witnessed what he thought was a
blowout.

 

What does that mean to us? 
It means something very, very, very clearly.  It means that something obviously went wrong
with this tire.  This man didn’t get to
see an accident that took place in two seconds stopped frame by frame.  What he saw was something come loose, and
that’s exactly what Mr. Walker told you. . . . .

 

Additionally, the unidentified
witness’s testimony was very likely calculated to overcome contradictory
evidence.  To support its causation
theory and discount the opposing theory, Volkswagen, like the plaintiffs,
offered extensive expert witness testimony through an accident reconstructionist and metallurgist.  It also presented an eyewitness who testified
that the car appeared to be bouncing as it crossed the median and that its back
end lifted off of the ground upon impact with the Mustang.  Finally, the sergeant who investigated the
accident testified that the inspection indicated, albeit not definitively, that
the Passat left four tire marks in the median and
westbound lanes.

In sum, the evidence in question
was not merely cumulative, it was heavily emphasized by the Ramirez’s counsel,
and it was very likely calculated to overcome contradictory evidence at
trial.  Considering these factors, I
would hold that its erroneous admission was harmful and therefore necessitates
reversal.

III

Conclusion

 

Cox’s testimony is legally
sufficient to support the jury’s causation finding.  I would not affirm the court of appeals’
judgment on this ground, however, because the erroneous admission of the
unidentified witness’s statements probably resulted in the rendition of an
improper judgment.  Accordingly, I would
reverse the court of appeals’ judgment and remand the case to the trial court
for a new trial.  See Tex. R. App. P. 60.2(d).

 

 

______________________________

Wallace B. Jefferson       

Chief Justice 

                                                

OPINION
DELIVERED:     December 31, 2004                                                     

 

 











[1] Texas Rule of Appellate Procedure 53.2(f) states:
“The petition must state concisely all issues or points presented for
review.  The statement of an issue or
point will be treated as covering every subsidiary question that is fairly
included.”  See also Tex. R. App. P. 55.2 (brief on merits must be confined to issues
stated in petition for review). 
Volkswagen, in petitioning this court for review, did not complain that
Cox’s testimony on causation was legally insufficient.  The issue presented in Volkswagen’s petition
for review was not briefed and referred to Walker, not Cox: “Was the
unsupported testimony of the plaintiffs’ accident reconstruction expert [Walker] legally sufficient evidence of causation?”
(Emphasis added.)  Volkswagen first
challenged Cox on causation in its reply brief on the merits and then devoted
only two sentences suggesting, inaccurately, that Cox did not testify about
when the bearing failed or whether it could have contributed to the
accident.  Given this procedural
background, the Court has essentially concluded that Rules 53.2(f) and 55.2,
although stated as mandates, are merely aspirational.






[2] The jury answered “yes” to this question: “Was there
a defect in the Volkswagen Passat stationwagon
at the time it left the possession of Volkswagen of America, Inc., that was a
producing cause of the occurrence in question?” 






[3] Justice Hecht’s colorful concurrence misses the
point.  Volkswagen has not challenged in
this Court the methodology employed by Cox or the extent to which his
conclusions are supported by testing, which form the bulk of Justice Hecht’s
concurrence.  Cox does not say “the moon
is made of green cheese,” or “the Earth is the center of the solar system,” but
rather that objective evidence supports his conclusion that the bearing failure
occurred before the Passat left the eastbound lane
and caused the accident.  See Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 420 (Tex. 1998) (Hecht, J., concurring).  A court may decide as a matter of law that
the former examples are “no evidence,” but when more than a scintilla of
objective evidence supports an expert’s conclusions in a technical area in
which judges have no particular expertise, and when that expert’s methodology
is not challenged on appeal, the question becomes one of factual, and not
legal, sufficiency.       





[4] Whether the evidence is sufficient, as a factual
matter, to support the jury’s finding is beyond this Court’s jurisdiction.  This is not to deny the trial court’s obligation,
as gatekeeper, to assess reliability during the Daubert-Robinson
hearing, see Daubert v. Merrell Dow
Pharmaceuticals, Inc., 509 U.S. 579 (1993), and E.I. du
Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995), nor the
appellate court’s obligation to evaluate the trial court’s determination when a
party challenges reliability on appeal. 
But here, as the Court notes, “Volkswagen does not object to the
reliability of Cox’s testimony.”  __
S.W.3d at __.  Our limited task, then, is
to determine whether the evidence is legally sufficient.