

NUMBER 13-23-00127-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

CARL BOB HELLUMS,
INDIVIDUALLY AND
CONSTRUCTION & RESTORATION
GROUP, L.L.C.,                                                    Appellants,

v.

ROBERT E. SELLS,                                                  Appellee.

ON APPEAL FROM THE 148TH DISTRICT COURT
OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Silva**

Appellants Carl Bob Hellums, Individually and Construction & Restoration Group,

L.L.C., filed this restricted appeal from a final judgment entered in favor of appellee Robert

E. Sells. By five issues, appellants argue the trial court erred by: (1) imposing death penalty sanctions on them; (2) entering a judgment despite legally and factually insufficient evidence to support the claim; (3) entering a judgment where the pleadings affirmatively negate the claim; (4) awarding attorney's fees despite legally and factually insufficient evidence in support thereof; and (5) denying their motion to extend post-judgment deadlines under Texas Rule of Civil Procedure 306a. We reverse and remand.

## I.    BACKGROUND

### A.    The Pleadings

On January 26, 2022, Sells filed his original petition, alleging that he entered into a partnership with "Hellums and/or Construction & Restoration Group[,] L.L.C." with another, Greg Atchley,[1] "to be one-third partners in various construction and real estate matters." However, according to Sells, the parties agreed to discontinue their business relationship and appellants were to purchase Sells's one-third interest for $652,997.06. Sells alleged that appellants paid Atchley in accordance with the agreement but never paid Sells. Accordingly, Sells sought $652,997.06 in damages, pre and postjudgment interest, and attorney's fees.

On February 28, 2022, appellants filed a general denial and verified plea, denying the existence of a partnership and liability in the capacity in which they were sued, and included the affirmative defenses of estoppel, failure of consideration, laches, and waiver. Appellants also filed a counterpetition, claiming that Sells was a salaried employee who breached his fiduciary duties during his employment. Appellants demanded a jury trial,

---

[1] Greg Atchley is not a party to the suit.

stating that they tendered the appropriate fee.

**B.      First Motion to Compel and for Sanctions**

On June 3, 2022, Sells filed a motion to compel responses to his discovery requests, as well as attorney's fees as a sanction for failing to timely respond to the requests. The motion alleged that appellants failed to file their initial disclosures or respond to Sells's combined requests for admissions, production, and interrogatories. *See* TEX. R. CIV. P. 190–198. The motion included a notice of hearing for June 13, 2022.

At the June 13 hearing, only Sells's counsel appeared.[2] Counsel represented that appellants' discovery responses were due on or before April 23, 2022, and that no responses were propounded. According to counsel, he notified appellants' counsel of the issue on April 26 via email and appellants' counsel responded on May 2, stating that he was working on the responses. After not receiving the responses, counsel followed up two more times with no response from appellants' counsel. Sells's counsel also testified regarding attorney's fees.

The trial court granted Sells's motion to compel and, as a sanction for failing to respond, ordered appellants to pay $1,080 in attorney's fees. The trial court ordered appellants to respond to Sells's discovery requests by June 30, 2022.

**C.      Second Motion for Sanctions**

On September 9, 2022, Sells filed a second motion for sanctions, again alleging that appellants failed to respond to any of his discovery requests or propound initial

---

[2] The record indicates that the hearing proceeded via remote video conferencing. Sells's counsel represented to the trial court that both he and the trial court manager notified appellants' counsel that the hearing would proceed remotely.

disclosures. Moreover, Sells complained that appellants had failed to pay the court-ordered attorney's fees sanction. Sells requested the trial court "impose sanctions on [appellants] in accordance with Rule 215 [of the Texas Rules of Civil Procedure], that [Sells] be granted reasonable attorney's fees from [appellants] incurred in obtaining the [trial c]ourt's [o]rder[,] and that [he] be granted all further relief to which [he] may be entitled." No notice of setting accompanied Sells's second motion.

The trial court heard Sells's second motion for sanctions on October 10, 2022. Again, only Sells's counsel appeared at the hearing.[3] Sells's counsel testified:

> Judge, I'd like the Court to take judicial notice of your file, which will reflect that on March 24th of this year I propounded pretrial discovery to [appellants] through their attorney . . . . He did not respond to the discovery, so on April 26th[,] I sent him an e-mail asking him what the story is. On May 2nd[,] he sent me an e-mail back saying he's working on the responses. I didn't hear from him. On May 12[th,] I sent him another e-mail following up, I did not hear from him. On May 19th[,] I sent him another e-mail, I did not hear from him. On May 23rd[,] I sent him another e-mail, did not hear from him. As a result of that, I filed a motion on June 3rd for sanctions, and on June 13th you entered an order, and I might add [appellants' trial counsel] did not show up for that hearing, you entered an order telling him to answer the discovery by June 30th and pay some attorney's fees. The next day I sent a copy of that order to [appellants' trial counsel]. A couple of weeks later, I did hear from him, and he asked for an extra week to respond to the discovery, and I said fine. I never got the responses. On July 11th[,] I sent him an e-mail telling him he was past due again and told him I was going to be seeking sudden death sanctions if he didn't do something, and I gave him some time to respond to me. I did at that time, Judge, get a response from him saying he was having some medical issues, and I know he has had some medical issues, but he said on July 11th, he told me that he had met with the client last week and he's getting the documents together. I then asked him by e-mail if he was going to be able to stay in the lawsuit as the attorney of record given his medical situation, and he responded he didn't know. I didn't hear from him anymore. On July 25th[,] I sent him another e-mail asking him "What am I supposed to do . . . ? I've got a client to

---

[3] Although the proceeding again occurred via Zoom, the trial court called appellants' and their counsel's names outside of the courtroom, to which nobody responded.

represent. What do you want me to do?" He e-mailed me in response to that saying he'd give me a call tomorrow. That call never came. On July 28th[,] I sent him an e-mail reminding him that he was going to give me a call and I never heard from him. I didn't hear anything. On August the 1st[,] I sent him another e-mail. I again said, "I'm going to go for sudden death sanctions if I don't hear from you by the end of the week." I did not hear from him. On August 11th[,] I filed this motion for sanctions and said, basically, "[Counselor], here's this motion for sanctions. What do you want me to do? How shall I proceed?" I did get a response saying that he had been—he was in the hospital for pneumonia. I never heard from him. So, finally, on September 14th[,] I set this matter for a hearing. I sent him an e-mail saying, "Let me know if you have a conflict." Since that time, Judge, I have not heard anything from [appellants' trial counsel]. Judge, I—I really don't know what to do. I mean, I've been—this discovery is six months out. I realize sudden death penalty sanctions are pretty brutal. I realize [appellants' trial counsel] has had some medical problems, but it's costing the client a lot [of] money, and I need to prosecute this claim, so—and let me also say that I'm—I'm asking for attorney's fees in this case, and that would be—I have spent and will have spent by the time I get an order done 3.9 hours. My hourly rate is $400 an hour. The work that I have done involves reviewing the file, filing the motion for sanctions, substantial correspondence to [appellants' trial counsel], preparation of the motion for sanctions, setting this matter for a hearing, the phone call with [the trial court manager], prepared for this hearing, and I'll prepare an order based upon the Court's ruling, and so that total attorney's fees I'm asking for is $1,560.

The trial court granted Sells's motion for sanctions, imposing death penalty sanctions on appellants, striking their pleadings, entering a default judgment in Sells's favor, and ordering appellants to pay an additional $1,560 in attorney's fees. The trial court set a hearing for Sells to "prove his damages and attorney's fees."

## D. The Judgment and Post-judgment Proceedings

The trial court received Sells's evidence supporting damages and attorney's fees on November 18, 2022. The same day, the trial court entered a final judgment in favor of Sells in the amount of $712,039.62 plus postjudgment interest. The trial court granted Sells's request for reasonable and necessary attorney's fees in the amount of $11,584.05, plus contingent appellate attorney's fees. The trial court rendered a take-nothing

judgment on appellants' counterclaims.

On February 15, 2023, appellants filed a motion seeking to extend the postjudgment deadlines, including for a motion for new trial.[4] Appellants claimed that they did not receive notice of the judgment until February 13, 2023, when Hellums contacted his original attorney and explained that his bank accounts had been garnished pursuant to a court order. The motion was accompanied by an unsworn declaration from Hellums, who is also a member of Construction & Restoration Group, L.L.C., averring that he was unaware of the judgment until his bank notified him that his accounts were garnished. Hellums averred that he would have instructed his attorney to file a motion for new trial and perfect the appeal had he known. Appellants' original counsel also filed an unsworn declaration, indicating that from August 2022 on, he suffered from various health complications as well as technological disruptions in work in September and October 2022. Appellants' original counsel similarly averred that he did not receive notice of the judgment until February 13, 2023.

On February 28, 2023, the trial court heard argument and received evidence on appellants' motions. In addition to affirming the facts alleged in his affidavit, Hellums denied having any knowledge of Sells's motions to compel and requests for sanctions. The trial court admitted several exhibits demonstrating the notice of judgment and judgment itself being sent to appellants' original trial counsel via email and first-class mail. Sells's trial counsel also testified; when asked if he had any indication that Hellums was aware of the motions, he responded "I do[ not] recall." The trial court denied Hellums's

---

[4] Appellants had new counsel for their postjudgment motion.

motion to extend the postjudgment deadlines. This restricted appeal followed.

## II. RESTRICTED APPEAL

To prevail on a restricted appeal, an appellant must demonstrate:

(1)     he filed notice of the restricted appeal within six months after the judgment was signed;

(2)     he was a party to the underlying lawsuit;

(3)     he did not participate in the hearing that resulted in the judgment complained of, and did not timely file any post-judgment motions or requests for findings of fact and conclusions of law; and

(4)     error is apparent on the face of the record.

*Ex parte E.H.*, 602 S.W.3d 486, 495 (Tex. 2020) (citing *Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014) (per curiam)); *see* TEX. R. APP. P. 30. "For these purposes, the 'face of the record' consists of all the papers that were before the trial court at the time it rendered judgment." *Ex parte Vega*, 510 S.W.3d 544, 547 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.); *see also Tex. Dep't of Pub. Safety v. Salazar*, No. 13-12-00771-CV, 2013 WL 4399185, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2013, no pet.) (mem. op.) ("The 'face of the record' includes all papers on file in the appeal and the reporter's record, if any."). "The requirement that error be apparent on the face of the record means that 'error that is merely inferred [from the record] will not suffice.'" *Id.* (quoting *Ginn v. Forrester*, 282 S.W.3d 430, 431 (Tex. 2009) (per curiam) (alteration in original)). However, restricted appeals may include challenges to the legal and factual sufficiency of the evidence. *Norman Commc'n v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam); *Tex. Dep't of Pub. Safety v. Fredricks*, 235 S.W.3d 275, 280–81 (Tex. App.—Corpus Christi–Edinburg 2007, no pet.). "Review by [restricted appeal]

7

affords an appellant the same scope of review as an ordinary appeal, that is, a review of the entire case." *Id.*

Here, the record plainly demonstrates that appellant satisfied the first three elements. *See Ex parte E.H.*, 602 S.W.3d at 495. The final component—whether error is apparent from the face of the record—was also met as explained below by our review of the record. *Id.*

### III.    DEATH PENALTY SANCTIONS

Appellants' first issue challenges the trial court's issuance of death penalty sanctions.

### A.    Standard of Review and Applicable Law

A trial court may impose appropriate sanctions, after due notice and hearing, on parties who refuse to respond, or who give inadequate responses, to valid discovery requests or orders. *See* TEX. R. CIV. P. 215.1–.5; *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 884 (Tex. 2017). Such decision will be set aside only upon a showing of abuse of discretion. *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). We review the entire record independently to determine whether the trial court acted without reference to guiding rules and principles such that its ruling is arbitrary or unreasonable. *Id.*

"Although sanctions intended to secure compliance with court orders and deter noncompliance are often essential to the orderly conduct of trial-court proceedings, our precedent dictates that courts should avoid a 'trial by sanctions' whenever possible." *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 575 (Tex. 2018) (per curiam).

8

(citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding)). "Sanctions so severe that they prevent a decision on the merits are not justified except in the most severe cases of flagrant bad faith." *Id.* at 575; *Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 489 (Tex. 2014) (requiring that assessed sanctions be "just"). Reviewing courts generally follow a two-part test in determining whether a particular sanction for discovery abuse is just. *Altesse Healthcare Sols.*, 540 S.W.3d at 572. "First, a direct relationship must exist between the offensive conduct, the offender, and the sanction imposed." *Petroleum Sols.*, 454 S.W.3d at 489. In other words, the sanction "should be visited upon the offender," and the "trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both." *TransAmerican*, 811 S.W.2d at 917. "Second, a sanction must not be excessive, which means it should be no more severe than necessary to satisfy its legitimate purpose." *Petroleum Sols.*, 454 S.W.3d at 489; *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004) ("[I]n all but the most egregious and exceptional cases, the trial court must test lesser sanctions before resorting to death penalty sanctions.").

## B.     Analysis

Among appellants' arguments regarding the death penalty sanctions is that the conduct supporting the sanctions was not attributable to appellants as opposed to their counsel. Sells, in response, argues that appellants are arguing from the absence of evidence in a record rather than from the face of the record. In the alternative, Sells argues that appellants' counsel's "callous disregard for the responsibilities of discovery" support the trial court's death penalty sanction. Additionally, Sells points to his counsel's

9

testimony at the second sanctions hearing that appellants' counsel stated that he had met with his clients and was gathering documents. Lastly, Sells argues that we should not review any evidence that was not before the court at the time it entered the death penalty sanctions, such as testimony from the postjudgment hearing.

Nothing in the record through the second sanction hearing supports a conclusion that the conduct complained of—failure to comply with discovery requests—was attributable to appellants rather than their counsel. *See TransAmerican*, 811 S.W.2d at 917. Although Sells directs us to his counsel's testimony that appellants' trial counsel claimed to have met with his clients to comply with discovery, nothing in that statement shows that appellants were aware of the discovery deadlines or sanctions.[5] *See id.* at 917–18 (rejecting sanctions and noting that "it [was] not clear whether [the party] or its counsel or both should be faulted for [a witness]'s failure to attend [the witness's] deposition"); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam) (concluding that the trial court abused its discretion where there was no evidence of whether the client or counsel was responsible for discovery abuse); *see also Chrissos v. PlainsCapital Bank*, No. 13-21-00271-CV, 2022 WL 17492276 (Tex. App.—Corpus Christi–Edinburg Dec. 8, 2022, no pet.) (mem. op.) (reversing the trial court's death penalty sanctions where the conduct complained of could not be sufficiently attributed to

---

[5] We agree with Sells that we may not consider appellants' postjudgment evidence. *See Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991) (limiting the "face of the record" to evidence before the trial court at the time it entered its judgment); *Ex parte Vega*, 510 S.W.3d 544, 547 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (same). Although the Texas Supreme Court has held that extrinsic evidence may be considered in a restricted appeal, it noted that it must be presented through a bill of review or motion for new trial to afford the trial court an opportunity to cure any error first *See Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848–49 (Tex. 2004); *Falcon Ridge Apartments*, 811 S.W.2d at 944. Neither procedure was followed here.

the party).

Citing *TransAmerican*, Sells argues that death penalty sanctions may be assessed following "counsel's callous disregard for the responsibilities of discovery under the rules." 811 S.W.2d at 918. However, cases that adjudicate a party's claims through sanctions based on their counsel's acts or omissions are few and far between. In a 2015 memorandum opinion, we reviewed case-determinative sanctions against a party based on their counsel's egregious actions.[6] *See Sosa v. Union Pac. R.R. Co.*, No. 13-13-00257-CV, 2015 WL 2353024, *6–9 (Tex. App.—Corpus Christi–Edinburg May 14, 2015, pet. dism'd) (mem. op.). We noted that although *TransAmerican* allows for such sanctions based on counsel's behavior, it also stated that "a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation." *Id.* at *7 (quoting *TransAmerican*, 811 S.W.2d at 917). Moreover, the Texas Supreme Court has similarly reversed case-determinative sanctions where the record contained no evidence that the sanction was imposed against the offender.[7] *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882–83 (Tex. 2003) (per curiam) ("Although the sanctions were generally 'directed against' the alleged abuse, the record contains no evidence that the sanctions were 'visited on the offender.'"). Similarly, in *Chrissos*, we

---

[6] The offensive conduct included suborning perjury, using the perjured statements in pleadings, having a third-party pretend to be counsel for the defendants when talking to the opposing party's employee, and filing a "joint order" without consulting the opposing party. *See Sosa v. Union Pac. R.R. Co.*, No. 13-13-00257-CV, 2015 WL 2353024, *1–4 (Tex. App.—Corpus Christi–Edinburg May 14, 2015, pet. dism'd) (mem. op.).

[7] The Texas Supreme Court also concluded that the sanctions imposed were excessive compared to the severity of the offensive behavior: late production of witness statements in response to discovery requests. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex. 2003) (per curiam).

reversed case-determinative sanctions where "no record evidence support[ed] the conclusion that appellants had personal knowledge of or any role in their trial counsel's failures to timely respond to appellee's discovery requests throughout the pendency of the case." *See Chrissos*, 2022 WL 17492276, at *4 (citing *Spohn Hosp.*, 104 S.W.3d at 882). Sells's attempt to differentiate this case from *Sosa* and *Chrissos* on a factual basis is unavailing.

Because there was no evidence demonstrating that the failure to produce discovery could be attributed to appellants, the trial court abused its discretion by implementing death penalty sanctions. *See In re Garza*, 544 S.W.3d 836, 842 (Tex. 2018) (per curiam) (orig. proceeding) ("We conclude that the trial court acted arbitrarily and abused its discretion by imposing sanctions on [the party] in the absence of evidence that she was an offender."); *TransAmerican*, 811 S.W.2d at 917–18. Accordingly, appellants have demonstrated that error is apparent from the face of the record. *See* TEX. R. APP. P. 30; *Ex parte E.H.*, 602 S.W.3d at 495. We sustain appellants' first issue.[8]

## IV. CONCLUSION

We reverse the trial court's judgment and remand the matter for further proceedings consistent with this memorandum opinion.

CLARISSA SILVA
Justice

Delivered and filed on the
28th day of March, 2024.

---

[8] Because we have sustained appellants' first issue, we do not need to reach appellants' remaining issues. *See* TEX. R. APP. P. 47.4.

12