**Motions For En Banc Reconsideration Denied as Moot; Memorandum Opinion of January 27, 2015, Withdrawn; Affirmed in Part and Reversed and Remanded in Part and Substitute Memorandum Opinion filed April 28, 2015.**



In The

# Fourteenth Court of Appeals

NO. 14-13-00794-CV
NO. 14-13-00997-CV

**ROBERT PRIMO, Appellant**

**V.**

**SCOTT ROTHENBERG, Appellee**

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause Nos. 2012-68391-A & 2012-68391**

## SUBSTITUTE MEMORANDUM OPINION

We deny the motions for en banc reconsideration filed by appellant, Robert Primo, and appellee, Scott Rothenberg, as moot. We withdraw our memorandum opinion issued January 27, 2015, and we issue this substitute memorandum opinion in

its place.

Robert Primo challenges orders arising from a fee dispute with his former attorney, Scott Rothenberg. These orders imposed death penalty sanctions against Primo and granted summary judgment in favor of Rothenberg. Collectively, these orders dispose of all issues and claims raised in the trial court.

We affirm the trial court's grant of a no-evidence summary judgment in Rothenberg's favor with respect to Primo's affirmative defenses and counterclaims. We reverse the trial court's imposition of death penalty sanctions; we also reverse the trial court's grant of a traditional summary judgment in favor of Rothenberg with respect to his attorney's fees, which was predicated on the erroneous death penalty sanctions against Primo.

## OVERVIEW

Rothenberg sued Primo to collect $57,999.63 in attorney's fees alleged to be due for representing Primo in an underlying lawsuit. Primo pleaded a general denial along with several affirmative defenses and counterclaims. A series of complicated procedural steps unfolded as the dispute progressed.

Rothenberg filed a no-evidence motion for summary judgment addressing Primo's affirmative defenses and counterclaims, which the trial court granted in an order signed on May 13, 2013. Rothenberg also filed a motion for death penalty sanctions against Primo, which the trial court granted in a separate order signed on May 22, 2013.

The trial court's sanctions order struck Primo's pleadings (among other things) and ordered Primo to pay Rothenberg $57,999.63 as "past due sums" for attorney's fees under the "agreement in question" between Primo and Rothenberg relating to the underlying litigation.

2

The trial court signed another order on June 10, 2013, in which it (1) severed "Rothenberg's claims to recover $57,999.63 in attorney's fees" from the original trial court cause number 2012-68391; (2) directed the severed cause to be filed under cause number 2012-68391-A; and (3) directed that "the only live claims remaining for resolution [in the original trial court cause number] . . . are the amount of attorney's fees" due to Rothenberg from Primo for litigating Rothenberg's entitlement to the initial $57,999.63 fee amount.

Primo appealed the orders filed under new cause number 2012-68391-A, and Primo's appeal was assigned cause number 14-13-00794-CV in this court. This appellate cause number encompasses issues related to (1) the no-evidence summary judgment in Rothenberg's favor with respect to Primo's counterclaims and affirmative defenses; and (2) the death penalty sanctions against Primo.

Following severance, Rothenberg filed a traditional summary judgment motion in trial court cause number 2012-68391 asserting that he incurred $148,100 in attorney's fees to prosecute his claim for the initial $57,999.63 fee amount. The trial court granted Rothenberg's traditional summary judgment motion under the original trial court cause number in a "Final Judgment" signed on November 5, 2013. Primo appealed from the trial court's traditional summary judgment order, and the appeal was assigned cause number 14-13-00997-CV in this court.

Considering the procedural posture of this dispute and the related issues before us, we consolidate Primo's appeals filed under cause numbers 14-13-00794-CV and 14-13-00997-CV.

In addressing a multitude of arguments raised in this consolidated matter, we first determine whether the trial court's no-evidence summary judgment in Rothenberg's favor on Primo's affirmative defenses and counterclaims can stand. Second, we determine whether the trial court acted within its discretion in granting death penalty

3

sanctions against Primo. Third, we determine whether the trial court properly granted traditional summary judgment in favor of Rothenberg on his claim to recover additional attorney's fees incurred in litigating the initial $57,999.63 fee dispute.

The various legal disputes involving Primo have many arms and legs. Voluminous briefing is on file. The dispute at issue in cause numbers 14-13-00794-CV and 14-13-00997-CV is involved and contentious enough without re-fighting battles fought in yet other appellate matters. Accordingly, we decline the invitation to refer to, rely on, or take judicial notice of records in cause numbers 14-13-00492-CV, 14-13-00495-CV, 14-13-00532-CV, 14-14-00417-CV, and 14-14-00458-CV. We will rely on the appellate records and filings in cause numbers 14-13-00794-CV and 14-13-00997-CV.

### FACTUAL AND PROCEDURAL BACKGROUND

We begin with a detailed description of the procedural history leading to the orders Primo challenges on appeal.

### I.      Rothenberg Represents Primo

Travelers Casualty and Surety Company sued Primo in July 2009 alleging causes of action for fraud, fraud in the inducement, conversion, unjust enrichment, indemnity for payment on bond, and theft of property. In turn, Primo sued Briar Green Condominium Association to recover under an indemnity agreement in connection with the claims asserted against him by Travelers; Primo sought to obtain from Briar Green the attorney's fees and expenses he incurred in the Travelers suit, along with attorney's fees and expenses incurred in prosecuting the indemnity suit.

Porter Hedges LLP attorneys John Irvine and Blake Runions initially represented Primo. They withdrew in April 2012. Rothenberg began representing Primo in the indemnity suit on May 22, 2012, after Primo signed a written representation agreement

4

with Rothenberg.

On October 9, 2012, Great American Insurance offered to settle Primo's indemnity claim against Briar Green by paying Primo $365,000 in exchange for a full release. Rothenberg advised Primo to accept the settlement offer because there "exist[ed] a substantially less than 1% chance" that Primo would "receive a result as favorable or more favorable than the $365,000 settlement" after a trial. Primo rejected Rothenberg's recommendation and the settlement offer.

Before proceeding to trial in the indemnity case in October 2012, Rothenberg demanded that Primo pay (1) $30,221.30 to Rothenberg pursuant to the representation agreement for "past professional legal services rendered;" and (2) another $25,000 for "replenishment of the initial retainer to cover professional legal services and expenses of litigation incurred." When Primo did not pay Rothenberg as requested by October 28, 2012, Rothenberg required Primo to sign an agreement "on the morning of October 29, 2012, immediately prior to jury selection" in the indemnity trial. Under the October 29 agreement, Primo "unconditionally promis[ed] to pay the sum of $50,000 to [Rothenberg] at or before 5:00 p.m. on Friday, November 2, 2012."

The indemnity case proceeded to jury trial on October 29, 2012. The jury returned a verdict in favor of Primo and awarded him $100,194.89 in damages and attorney's fees. It is undisputed that Primo did not pay the total amount of fees to which Rothenberg contended he was entitled.

## II.    Rothenberg Sues Primo

After Primo failed to pay Rothenberg in full for representing him in the Briar Green indemnity litigation, Rothenberg sued Primo on November 16, 2012, in trial court cause number 2012-68391. Rothenberg's original petition alleged claims for breach of representation agreement, breach of written agreement, and suit on sworn account; he

sought $57,999.63 in fees for his representation of Primo in the indemnity suit. Primo filed his original answer and counterclaim for "legal malpractice and related torts" on December 17, 2012.

## A. Discovery

Rothenberg filed his first set of interrogatories, first request for production, and requests for disclosure with his original petition.

On January 14, 2013, Primo filed (1) responses to Rothenberg's requests for disclosure, and stated that he would supplement his responses when additional information became reasonably available; (2) responses to Rothenberg's first set of interrogatories, including statements that he would supplement his responses when additional information became reasonably available; and (3) objections to requests for production. The objections asserted that Rothenberg sought information or documents that Rothenberg was "already in possession of or has equal access to," or that the requested materials were not "relevant to the subject matter of the pending action, material or reasonably calculated to lead to the discovery of admissible evidence." Primo also stated that he would supplement his responses when additional information became available.

Rothenberg filed a motion to compel under Texas Rule of Civil Procedure 215.1 on January 16, 2013. Rothenberg stated that Primo's responses and objections were due by 5:00 p.m. on January 14, 2013. Rothenberg argued that, although Primo's responses and answers were "served by fax transmission that began at 4:58:31 p.m., on January 14, 2013," they nonetheless were "served late and untimely because the fax transmission was received in Rothenberg's office" at 5:11 p.m. on January 14, 2013. Rothenberg argued that Primo had "waived his objections to the discovery that was propounded by Rothenberg."

Rothenberg also argued that Primo failed to make an "acceptable objection" when Primo objected that "this request seeks information or documents that [Rothenberg] is already in possession of or has equal access to." Rothenberg argued, "This is a valid reason to compel production of documents even if a litigant contends that the documents are in the possession, custody or control of the requesting party. Additionally, the requesting party is entitled to understand what documents the producing party believes are responsive to each of the requests." Rothenberg also argued that Primo's promise to supplement "when additional information becomes reasonably available" was not a valid excuse for incomplete responses to each request for disclosure.

Rothenberg further contended that Primo (1) failed to object and fully respond to Interrogatories Nos. 1 through 6; (2) improperly responded to each of Rothenberg's interrogatories with the statement that "Defendant will supplement this response when additional information becomes reasonably available;" (3) "improperly answered 'none at this time' with respect to recorded statements of Rothenberg" in response to Interrogatory No. 12; and (4) failed to "identify what licensed attorney, if any, has opined that the conduct set forth in Primo's interrogatory answers constitutes a breach of the common law, statutory, regulatory, or administrative duty alleged to have been violated" in response to Interrogatory No. 13.

Rothenberg filed his first amended petition on January 17, 2013, in which he asserted claims for breach of the representation agreement, breach of the written agreement, fraud, and suit on sworn account; he sought $57,999.63 in fees for representing Primo in the indemnity suit, along with attorney's fees "incurred in any legal proceeding brought or commenced to enforce" the representation agreement and the written agreement. On the same day, Rothenberg served on Primo his second set of interrogatories and second requests for production by certified mail, return receipt

requested.[1]  The discovery requests were returned to Rothenberg; the returned envelope stated "return to sender," "unclaimed," "unable to forward."

On January 24, 2013, Primo filed a response to Rothenberg's January 16, 2013 motion to compel.  Primo argued that (1) his discovery responses were timely; (2) Rothenberg was not prejudiced by Primo's objection to production of documents already in Rothenberg's possession; (3) any request for attorney's fees contracts was outside the scope of discovery; (4) his answers were complete, based on currently available information, and complied with Texas Rule of Civil Procedure 197.1; (5) Rothenberg impermissibly served a total of 73 interrogatories; (6) Rothenberg's discovery requests were a pretext for seeking sanctions against Primo; (7) Rothenberg failed to file a certificate of conference prior to filing his motion to compel; and (8) Rothenberg's motion to compel was baseless.

The trial court signed an order on January 29, 2013, in which it (1) granted Rothenberg's motion to compel "in its entirety;" (2) overruled Primo's objections to Rothenberg's first set of interrogatories (numbers 1 through 13), and to Rothenberg's first request for production (numbers 1 through 9); and (3) ordered Primo to provide "Rothenberg with full, complete, truthful and specific answers to each part and subpart of Rothenberg's First Set of Interrogatories, Nos. 1-13, and Rothenberg's First Request for Production, Nos. 1-9, such that . . . these amended responses are physically received" in Rothenberg's law office by 3:00 p.m. on February 15, 2013.

Primo faxed his first supplemental responses to Rothenberg's first request for production on February 15, 2013; Primo's response to the nine document requests was: "See uploaded file at http://www.legalmal.net/Rothenberg/2012-68391.zip and

---

[1] Rothenberg requested that Primo produce (1) all "documents referenced in [his] responses" to Rothenberg's second set of interrogatories; and (2) the "complete reporter's record including exhibits, testimony, objection and all phases of trial and pretrial proceedings that were conducted in October of 2012."

http://www.legalmal.net/Rothenberg/PrintBoxes.zip Defendant will supplement this response when additional information becomes reasonably available." Primo also faxed his first supplemental responses to Rothenberg's first set of interrogatories.

At a hearing on March 11, 2013, Primo asserted that Rothenberg did not serve a second request for production asking for the trial record of the Briar Green indemnity trial. Rothenberg argued that he (1) served Primo by certified mail, but the envelope was returned "unclaimed;" and (2) requested the indemnity trial record because Primo's expert "is going to rely on that record and render his opinions." The trial court ordered Primo to produce the trial record from the Green Briar indemnity suit to Rothenberg by March 31, 2013, as Rothenberg requested in his second request for disclosure.

Primo filed his response to Rothenberg's second set of interrogatories on March 29, 2013, in which he objected to the three interrogatories because "the number of interrogatories greatly exceeds the maximum number of interrogatories allowed by Texas Rules of Civil Procedure." Primo also filed responses to Rothenberg's second request for production, in which he objected to the document request on the same ground stated in response to the second set of interrogatories; Primo further objected to the indemnity trial record request because "the document requested is the court reporter's work product and easily available from [a] source other than Defendant, name[ly] the court reporter in the 281st Court."

Rothenberg filed a supplement to his first amended petition with exhibits on March 31, 2013. He asserted (1) a "general denial to all elements of all claims" asserted in Primo's counterclaim; (2) "fraud, illegality, judicial admission, and violation of public policy with respect to the counterclaims, defenses, and affirmative defenses" asserted by Primo; (3) "contributory negligence, comparative causation, sole cause, contort, new and independent cause, estoppel, and waiver;" (4) "the protections against the imposition of punitive or exemplary damages contained in Chapter 41 of the Texas Civil

9

Practice & Remedies Code Annotated;" and (5) that "Primo's request for punitive and exemplary damages violates applicable provisions of the Texas and United States Constitutions."

Primo filed his "First Amended Answer and Counterclaim" on April 1, 2013, generally denying Rothenberg's claims; asserting affirmative defenses of set-off, duress, fraud, fraudulent inducement, illegality, payment, and unclean hands; and asserting counterclaims for breach of fiduciary duty, violation of the Deceptive Trade Practices Consumer Protection Act, fraudulent misrepresentation, fraud, fraud in the inducement, and negligent misrepresentation. Primo also pleaded for mental anguish damages, equitable disgorgement of fees, and exemplary damages.

Primo filed a designation on April 15, 2013, which identified Leonard James Meyer as a testifying expert.

Rothenberg faxed his "Expert Witness Designation for parties seeking affirmative relief" to Primo on April 15, 2013, which designated Rothenberg as a testifying expert.

## B. No-Evidence Motion for Summary Judgment

Rothenberg filed a no-evidence summary judgment motion on April 22, 2013. Rothenberg sought summary judgment as to each of Primo's pleaded affirmative defenses and counterclaims on the ground that "no evidence exists as to the following matters." Rothenberg then listed 72 discrete factual assertions.

Primo filed a response to Rothenberg's no-evidence summary judgment motion on May 6, 2013. Primo argued that a no-evidence summary judgment should not be granted because (1) "[i]t is impossible to summarize the Motion as it contains 72 haphazard allegations of no evidence, none of which identify the cause of action or the element thereof which they challenge;" (2) adequate time had not been allowed for discovery; (3) Rothenberg's motion was a "generic denial of Primo's entire case;" and

10

(4) Primo's exhibits, including the affidavits of Primo and Primo's expert witness, Leonard Meyer, constituted "competent probative evidence of each and every cause of action and each and every element thereof." Primo attached the indemnity trial transcript to his no-evidence summary judgment response; the trial transcript as produced covers three days of trial and contains approximately 400 pages.

Rothenberg filed a reply to Primo's response to Rothenberg's no-evidence summary judgment on May 10, 2013. Rothenberg contended in his reply that (1) Primo's complaint that there was inadequate time for discovery was groundless because Primo did not ask for a continuance and had five months to take oral depositions of potential witnesses; (2) Primo's complaint regarding the form of Rothenberg's no-evidence summary judgment motion was meritless because Rothenberg pointed out elements in each cause of action or affirmative defense for which there was no evidence; (3) Primo's summary judgment response was legally improper because Primo filed over 500 pages of summary judgment evidence in support of his response but did not "point out which part of his voluminous summary judgment exhibits provide evidence in response to which of the 72 no-evidence points asserted;" (4) Primo's expert evidence was conclusory and inadmissible because expert Meyer's opinions were not relevant, were unreliable, lacked sufficient foundation and evidentiary support, and failed to disclose facts and materials forming the foundation of the opinions; and (5) exhibits two to 11 attached to Primo's no-evidence summary judgment response constituted hearsay.

In his reply, Rothenberg objected to the admission of Meyer's expert opinions as well as Primo's affidavit opinions on grounds that they were conclusory, irrelevant, unreliable, and lacked foundational and evidentiary support. Rothenberg also objected to exhibits two through 11 on the ground that they were based on hearsay and were not subject to a hearsay exception.

Primo filed a sur-response to Rothenberg's no-evidence summary judgment

11

motion on May 13, 2013. In his sur-response, Primo withdrew his objection to the timing of Rothenberg's no-evidence summary judgment. Primo argued that (1) Rothenberg's motion was legally insufficient as a matter of law because it did not specify elements of Primo's causes of action that were not supported by evidence; (2) Rothenberg made "conclusory boilerplate objections" to Meyer's expert report; (3) Meyer's expert report was non-conclusory, relevant, reliable, and based on sufficient foundational and evidentiary support; and (4) Primo's exhibits did not constitute hearsay.

## C.     Motion for Death Penalty Sanctions

Rothenberg filed a "Motion For Death Penalty Sanctions, Or Alternatively, Motion For Sanctions And Motion To Compel Against Robert Primo" on May 3, 2013. Rothenberg outlined "Primo's discovery abuse" warranting death penalty sanctions as follows.

- In response to interrogatories, requests for production and disclosures Rothenberg filed with his original petition on November 16, 2012, Primo responded on January 14, 2013, "with some information but many groundless objections."

- After the trial court heard Rothenberg's motion to compel, it signed an order on January 29, 2013, granting the motion "in its entirety" and ordering Primo to provide "Rothenberg with full, complete, truthful and specific answers to each part and subpart" of Rothenberg's first set of interrogatories and first request for production by February 15, 2013.

- Primo refused to accept delivery of Rothenberg's second set of interrogatories and second request for production sent January 17, 2013, by certified mail, return receipt requested.

- Despite Primo's complaint at a March 11, 2013 hearing that he was not served

12

with Rothenberg's January 17, 2013 discovery requests, and that he was asked to produce the trial record of the Briar Green indemnity suit "for free" to Rothenberg, the trial court ordered Primo to produce the indemnity trial record to Rothenberg by March 31, 2013.

- Instead of producing the trial record, Primo filed objections on March 29, 2013, stating that "the document requested is the court reporter's work product and easily available from [a] source other than" Primo.

- In response to Rothenberg's second set of interrogatories (numbers 1 through 3) and second request for production of documents, Primo objected to the interrogatories because the "number of interrogatories greatly exceeds the maximum number of interrogatories allowed by Texas Rules of Civil Procedure." Primo knew this objection was "frivolous and groundless" because Primo had made this same objection in response to Rothenberg's original set of interrogatories and the trial court had overruled it; Primo's refusal to respond to these interrogatories and request for production justified a presumption that Primo's counterclaims and affirmative defenses addressed in these interrogatories and request for production lack merit.

- In response to Rothenberg's second request for production of the complete indemnity suit reporter's record, Primo objected that "the document requested is the court reporter's work product and easily available from" another source. Primo knew this objection was "frivolous and groundless" because Primo had made this same objection at the March 11, 2013 hearing and the trial court ordered him to give Rothenberg the trial transcript by March 31, 2013.

- Even after the trial court overruled Primo's objections to Rothenberg's first set of interrogatories and first request for production and ordered Primo in its January 29, 2013 order to provide Rothenberg full and complete answers, Primo served

first supplemental responses on February 15, 2013, that were inadequate, incomplete, and in violation of the trial court's order.

- With his first supplemental responses to eight requests for production, "Primo did not produce a single document." Primo provided Rothenberg with access to a website on which the requested documents allegedly were stored among 80,000 other documents; Primo also stated that he "will supplement this response when additional information becomes available," which is not a permissible response under Texas Rule of Civil Procedure 196.2(b).

- In his first supplemental response to Rothenberg's first set of interrogatories asking Primo to identify opinion experts, Primo did not provide a full and complete answer to Interrogatory No. 1 as instructed when he answered he "will designate expert(s) when their review is complete and report made available and the expert made available for discovery. Defendant will supplement this Response to Interrogatory No. 13 when additional information becomes reasonably available."

- In his first supplemental response to Rothenberg's first set of interrogatories, Primo stated in response to Interrogatory No. 2 that he had not pled a DTPA action "at this time" and that he would supplement his response "when additional information becomes available." Primo failed to supplement his discovery responses "in the month since he pleaded" his DTPA claim in his first amended answer on April 1, 2013.

- In his first supplemental response to Rothenberg's first set of interrogatories asking Primo to identify acts or omissions constituting a breach of any Texas Disciplinary Rule of Professional Conduct, Primo stated in response to Interrogatory No. 5 that Rothenberg violated ten Texas Disciplinary Rules of Professional Conduct, and he "intends to file a complaint [against Rothenberg]

with the Chief Disciplinary Counsel of the Texas State Bar."

Rothenberg argued that the "most egregious of Primo's numerous abuses of the discovery process is his withholding of the reporter's record" of the Briar Green indemnity trial even after being ordered by the trial court to produce it by March 31, 2013. Rothenberg contended that this conduct denied him the opportunity to (1) "review the materials that Primo's testifying expert witness has reviewed in formulating his opinions;" and (2) "do a full and effective Daubert challenge to the relevance and reliability of Primo's testifying expert witnesses opinions." Rothenberg further argued that (1) "Primo's numerous and serious abuses of the discovery process as set forth" in his motion justified a presumption that Primo's claims or defenses lack merit; and (2) "this is one of the rare cases where the imposition of death penalty sanctions for numerous and serious violations of discovery orders is appropriate."

Rothenberg requested that the trial court strike Primo's live pleadings; render a default take-nothing judgment on all of Primo's counterclaims; and render a default judgment on all of Rothenberg's "affirmative causes of action, leaving only the issues of actual damages, exemplary damages and attorney's fees to be awarded to [Rothenberg]." Alternatively, he asked the trial court to strike Primo's testifying expert witness designation as a discovery sanction and order Primo to fully and completely answer discovery requests within ten days.

The trial court signed an order on May 9, 2013, which (among other things) confirmed its oral order pronounced at the March 11, 2013, hearing instructing Primo to cooperate and allow Rothenberg to take Primo's deposition by April 10, 2013, and instructing Primo to produce the reporter's record of the Briar Green indemnity suit to Rothenberg.

Primo filed his response to Rothenberg's "Motion For Death Penalty Sanctions, Or Alternatively, Motion For Sanctions And Motion To Compel Against Robert Primo"

on May 10, 2013. Primo argued as follows.

- Rothenberg's authorities did not support death penalty sanctions because there are no "chronic grave discovery violations and disregard for the court's increasingly stern prior sanctions over a span of four years."

- Primo's prior failure to produce the reporter's record of the indemnity trial did not deny Rothenberg the opportunity to make a *Daubert* challenge because Primo provided the reporter's record on May 6, 2013, with his response to Rothenberg's no-evidence summary judgment motion, and nothing in the docket control order prevented Rothenberg from challenging Primo's designated expert.

- Primo answered each interrogatory and supplemented his responses by the trial court's due date of February 15, 2013.

- When Rothenberg's second set of interrogatories exceeded the maximum number of permissible interrogatories, Primo objected and Rothenberg did not file a motion to compel Primo to answer or "make an attempt to resolve the matter amicably."

- Despite Primo's objections to the excessive number of interrogatories, Primo served Rothenberg with supplemental responses to these interrogatories.

- Primo timely served responses on Rothenberg. Although Primo "did not serve the responsive documents on Rothenberg," Primo "did make the documents available for inspection at Rothenberg's leisure" and "Rothenberg did so inspect them for weeks."

- All the documents Primo produced already were in Rothenberg's possession.

- Primo allegedly served Rothenberg with the indemnity trial transcript but did not specify a date of service; Primo also attached the trial transcript to his no-

16

evidence summary judgment response on May 6, 2013.

- Primo provided the name of his expert on January 29, 2013.

- Although Primo did not supplement his discovery responses after pleading a DTPA claim on April 1, 2013, the pleading is "clearly and fully described in the expert's report" and in Primo's response to Rothenberg's no-evidence summary judgment motion.

- Primo made all necessary supplementations.

- Primo had not filed a disciplinary complaint against Rothenberg.

- The trial court never had sanctioned Primo for any alleged discovery abuse and Rothenberg failed to demonstrate "any discovery abuse whatsoever" or provide "any authority that any conduct by [Primo] in this lawsuit is sanctionable, let alone to the extreme level of death penalty sanctions."

Primo attached two exhibits to his response. Exhibit One contained Primo's supplemental responses to Rothenberg's second requests for production; Primo claimed that all documents referenced in Primo's supplemental responses to Rothenberg's second set of interrogatories,[2] "except the trial transcript, have been produced and/or Rothenberg admitted to being in possession thereof." Primo also stated that the indemnity trial record "is being produced herewith" subject to his previous objection that the indemnity trial record "is easily available for purchase" from the court reporter. Exhibit Two contained Primo's second supplemental responses to Rothenberg's first set of interrogatories; Primo provided supplemental answers to each subpart to Interrogatory No. 2 and provided an answer to Interrogatory No. 13.

---

[2] We have not found supplemental responses to Rothenberg's second set of interrogatories filed by Primo in the record before us.

**D.    Trial Court Rulings on No-Evidence Summary Judgment and Death Penalty Sanctions**

At 10:00 a.m. on May 13, 2013, the trial court held a hearing on Rothenberg's motion for death penalty sanctions. Primo did not appear at the 10 a.m. hearing. At the hearing, Rothenberg made the following argument in support of his death penalty sanctions motion:

> This is a case where I have outlined in my motion for death penalty sanctions eight different matters in which I have requested discovery in this case. Your Honor has signed orders or stated orders on the record compelling that discovery and Dr. Primo has either failed or refused to comply with Your Honor's orders. Normally death penalty sanctions are something that are difficult to support because you have to show that it's an indication — the abuse of the discovery process are such that it's an indication that the other side's claims lack merit. In this case, the discovery that I requested goes to the very heart of his case. Dr. Primo filed a legal malpractice lawsuit against me alleging that I mishandled a jury trial in the 281st District Court. I requested the trial record from that case which Dr. Primo ordered and paid for and provided to his expert witness. Dr. Primo objected to providing it. Your Honor compelled him to provide it. Dr. Primo then refused to provide it again by the deadline. And most cynically of all, a week before today, after Your Honor ordered him to produce it in response to my no[-]evidence motion for summary judgment, he did produce it. But it was too late for me to give it to an expert to evaluate the case in order to obtain expert testimony to protect myself. And so, Your Honor, given the eight discovery abuses that I've outlined in my motion, all of which are supported by Your Honor's either written or oral orders during hearings, Dr. Primo's repeated abuses of the discovery process in this case clearly establish the lack of merit to his claims. And therefore, I'm requesting a death penalty sanction of the striking of his pleadings and the only thing that would be left in this case after that would be a prove-up of my damages, attorney's fees and costs of court. And if I decide to go forward on my fraud claim for punitive damages that as well, but I would certainly reevaluate that in light of what Your Honor does here today.

The trial court stated that it would grant Rothenberg's motion and strike all of Primo's pleadings.

At 11:00 a.m. on the same day, the trial court held a hearing on Rothenberg's no-evidence summary judgment motion. Primo appeared at the 11:00 a.m. hearing. When the trial court informed Primo that it already had conducted a hearing on Rothenberg's motion for death penalty sanctions at 10:00 a.m., Primo stated that he believed Rothenberg's motions for death penalty sanctions and no-evidence summary judgment both were set for 11:00 a.m. Rothenberg stated that he had sent Primo notice through ProDoc.com, which affirmatively showed that the hearing on the motion for death penalty sanctions was noticed for 10:00 a.m., and the hearing on the no-evidence summary judgment motion was noticed for 11:00 a.m. Rothenberg then objected to the trial court considering the affidavit and expert report of Primo's expert, Meyer, because the court struck them as part of the death penalty sanctions. The trial court sustained Rothenberg's objection and stated that it would grant his no-evidence summary judgment motion.

After the hearing, the trial court signed an order on May 13, 2013, in which it granted Rothenberg's motion for no-evidence summary judgment with respect to Primo's defenses and counterclaims. The trial court stated that (1) Primo would take nothing against Rothenberg on all causes of action and counterclaims set forth in Primo's first amended answer and counterclaim; (2) "[t]his is an interlocutory order because the issues of the amount of Rothenberg's recovery against Primo for attorney's fees" in the Briar Green indemnity suit and "Rothenberg's causes of action for fraud, attorney's fees, interest and costs of court in this lawsuit remain pending;" and (3) all evidentiary objections set forth in Rothenberg's reply to Primo's no-evidence summary judgment response are sustained. On its face, this order does not reference sanctions or recite that the no-evidence summary judgment is being granted pursuant to a request for death penalty sanctions.

The trial court signed a separate "Order and Interlocutory Judgment" on May 22,

2013. The trial court stated that it considered Rothenberg's motion for death penalty sanctions with the attached written exhibits, applicable law, all prior proceedings in the lawsuit, the May 13, 2013 hearing on the motion for death penalty sanctions, and Primo's absence at the May 13, 2013 hearing despite receiving proper notice of the hearing. Based upon these considerations, the trial court made 52 findings of fact and five conclusions of law along with nine rulings. The trial court (1) struck Primo's "First Amended Answer and Counterclaim;" (2) struck Primo's affidavit as verification filed with Primo's "First Amended Answer and Counterclaim;" (3) struck Primo's "Original Answer and Counterclaim" and accompanying affidavit verifying the pleading; (4) struck the affidavit and expert witness report of Leonard Meyer; (5) ordered "Primo not to file any further answer, amended answer, supplemental answer, counterclaim, amended counterclaim, supplemental counterclaim, third-party petition, or any other pleading in the above-captioned and numbered lawsuit;" (6) ordered that Primo take nothing on all claims and counterclaims he asserted or could have asserted; (7) ordered that all of Primo's "affirmative defenses and verified pleadings are without merit and overruled in their entirety;" (8) ordered that Rothenberg recover from Primo $57,999.63, "representing past due sums under the agreement [between Rothenberg and Primo] in question plus contractually agreed interest" and court costs; and (9) ordered that "the only matters remaining for decision in this case are the amount of attorney's fees to be awarded to Scott Rothenberg for handling the prosecution and defense of all claims, demands, and causes of action in the above-captioned and numbered lawsuit, as well as the amount of exemplary damages to be awarded to Scott Rothenberg from Robert Primo as a result of Robert Primo's fraud in entering into the October 29, 2012 written agreement without any intent to comply therewith."

## E.    Severance

Rothenberg filed a motion to sever, and the trial court signed a severance order on

June 10, 2013. The trial court ordered that (1) Rothenberg's "claims to recover $57,999.63 in attorney's fees due and owing" from Primo were "severed from this action, with such severed claims and causes of action to be filed under Cause No. 2012-68391-A;" (2) "the only live claims remaining for resolution in the above-captioned and numbered lawsuit (2012-68391) are the amount of attorney's fees to Scott Rothenberg from Robert Primo for handling the prosecution and defense of all claims, demands, and causes of action in the above-captioned and numbered lawsuits (2012-68391 and 2012-68391-A), as well as the amount of exemplary damages to Scott Rothenberg from Robert Primo as a result of Robert Primo's fraud in entering into the October 29, 2012 written agreement without any intent to comply therewith;" (3) various pleadings and documents related to the severed claims were to be filed under cause number 2012-68391-A; (4) the "Order and Interlocutory Judgment" of May 22, 2013, was a final judgment for purposes of appeal; and (5) Primo would pay any costs "associated with the severance in question" upon entry of a final judgment in cause number 2012-68391.

Following severance, Primo timely filed a motion for new trial under the severed cause number 2012-68391-A on July 10, 2013. *See* Tex. R. Civ. P. 329b. Primo argued that the trial court abused its discretion by imposing death penalty sanctions without first considering the availability of less stringent discovery sanctions, and whether lesser sanctions would have promoted compliance with discovery. The trial court signed an order denying Primo's motion for new trial on August 19, 2013.

### F. Additional Proceedings

Rothenberg filed a notice of partial non-suit in cause number 2012-68391 on July 9, 2013, in which he stated that he "hereby non-suits without prejudice his claim for 'exemplary damages to be awarded to Scott Rothenberg from Robert Primo as a result of Robert Primo's fraud in entering into the October 29, 2012 written agreement without any intent to comply therewith.' Remaining pending in the above-captioned and

21

numbered matter is the amount of trial court and conditional appellate attorney's fees to be awarded to Scott Rothenberg for handling the prosecution and defense of all claims, demands, and causes of action in the above-captioned and numbered lawsuit." The trial court signed Rothenberg's notice of partial non-suit on July 19, 2013.

On August 27, 2013, Rothenberg filed a verified motion for entry of additional findings of fact and conclusions of law "in support of the [c]ourt's May 22, 2013 order of case-dispositive sanctions and its June 10, 2013 Order." Rothenberg argued that, after the trial court granted death penalty sanctions on May 22, 2013, Primo violated Texas Rules of Civil Procedure 203.3(c) and 203.4 because "Primo has had actual possession of the original deposition transcript [of attorney John Irvine], the exhibits from the oral deposition and the videotape from the oral deposition for over a month and a half (transcription and exhibits) and three months (videotape)." Rothenberg contended that Primo denied "access to the deposition transcript, signed errata sheet, exhibits and video and audio tape throughout that time." Rothenberg also argued that Primo's behavior before and after the imposition of death penalty sanctions established that no lesser sanction would have deterred Primo from violating the Texas Rules of Civil Procedure. Rothenberg claimed that Primo made several misrepresentations to the trial court at an August 26, 2013 hearing. Rothenberg asked the trial court to "reconsider the case dispositive sanctions set forth in its May 22, 2013 Order" and "order that all relief granted" in that order "is necessary and proper."

Primo timely filed a notice of appeal in severed cause number 2012-68391-A on September 6, 2013, in which he appealed from the (1) May 13, 2013 order granting Rothenberg's amended no-evidence summary judgment motion; and (2) May 22, 2013 order granting Rothenberg's motion for death penalty sanctions against Primo. This notice of appeal was timely because it was filed within 90 days of the date when the challenged order became final and appealable due to the June 10, 2013 severance order.

*See* Tex. R. App. P. 26.1.

After a hearing on September 16, 2013, the trial court signed "Additional Findings Of Fact And Conclusions Of Law." The trial court stated that it granted Rothenberg's verified motion for entry of additional findings of fact and conclusions of law; it then made 24 findings of fact and four conclusions of law. The trial court also stated:

> Based upon Robert Primo's conduct as set forth in this Order, as established by the exhibits to Rothenberg's August 27, 2013 motion, and by the Court taking judicial notice of the Court's entire file in Cause Nos. 2012-68391 and Cause No. 2012-68391-A, as well as all proceedings in those two lawsuits to-date, and in reliance thereupon, the Court hereby **RECONSIDERS** the case dispositive sanctions set forth in its May 22, 2013 Order and Interlocutory Judgment, as well as the Court's June 10, 2013 Order. Based upon all of the foregoing, the Court hereby orders that all relief granted in the Court's May 22, 2013 Order and Interlocutory Judgment and in its June 10, 2013 Order, is necessary and proper to the efficient administration of justice, is legally appropriate under all circumstances presented, complies with the due process requirements of all parties to this lawsuit, and shall stand without any change whatsoever.

The trial court's September 16, 2013 "Additional Findings Of Fact And Conclusions Of Law" were filed under cause number 2012-68391 and the severed cause number 2012-68391-A.[3]

### G.    Rothenberg's Traditional Motion for Summary Judgment

Rothenberg filed a traditional summary judgment motion in cause number 2012-68391 on October 2, 2013; this motion addressed Rothenberg's claim to additional attorney's fees incurred in litigating his entitlement to the initial $57,999.63 fee. Rothenberg asserted his entitlement to an additional fee award based on the adjudication

---

[3] The record before us does not contain a "June 10, 2013 Order" of additional discovery sanctions as referred to in the trial court's "Additional Findings Of Fact And Conclusions Of Law" signed on September 16, 2013.

23

of the initial $57,999.63 fee in his favor in the May 22, 2013 death penalty sanctions order. He stated that his "summary judgment is based upon Exhibit A- the affidavit of Scott Rothenberg, Exhibit B- the curriculum vitae of Scott Rothenberg, and Exhibit C- billing records of Scott Rothenberg pertaining to the handling of Cause No. 2012-68391, 'Scott Rothenberg v. Robert Primo,' in the 133rd Judicial District Court of and for Harris County, Texas and in the courts of appeals up through October 2, 2013." Rothenberg argued that exhibits A, B, and C established as a matter of law his entitlement to recover $148,100 from Primo pursuant to chapter 38 of the Texas Civil Practice and Remedies Code "for professional legal services he performed in the trial court and in the court of appeals up through October 2, 2013."

Primo filed a response to Rothenberg's traditional summary judgment motion on October 28, 2013. Primo argued that the trial court should not grant Rothenberg's summary judgment motion because (1) the attorney's fees amount Rothenberg sought to recover was a question of fact necessitating an evidentiary hearing, and affidavits in support of attorney's fees were "insufficient to prove attorney's fees;" (2) Primo raised a genuine issue of material fact that Rothenberg's attorney's fees were not reasonable and necessary in the form of an affidavit from Primo's expert, Meyer, who found Rothenberg's invoices and amounts "to be grossly inflated, false, and largely unnecessary" and who also found Rothenberg's "pleadings and briefs to be unnecessarily verbose, not diligently prepared with large portions pasted and re-pasted over and over;" (3) Rothenberg's summary judgment evidence of time sheets "must be stricken due to Rothenberg's undue withholding of that material evidence of attorney's fees;" (4) a claim for attorney's fees cannot be maintained independently in a separate lawsuit from the main claim for breach of contract and sworn account; (5) the single action rule prohibited the severance of Rothenberg's claim for attorney's fees, and, by seeking a severance, Rothenberg forfeited his attorney's fees claim in this lawsuit; and

24

(6) res judicata barred Rothenberg's attorney's fees claim in this lawsuit.

Rothenberg filed a reply to Primo's response to Rothenberg's summary judgment motion on November 1, 2013, in which he stated that "Primo improperly objected to and refused to answer a direct question regarding Primo's present net worth" during a court-ordered deposition; "forc[ed] Rothenberg to move to compel the information from Primo;" and the trial court therefore entered the following sanctions order on June 10, 2013:

> The Court finds that Robert Primo has not learned a lesson regarding acceptable and unacceptable conduct in pretrial discovery from the imposition of death penalty sanctions against him in this case. In so finding, the Court considers all of Robert Primo's abuses of the discovery process pertaining to seeking and resisting pretrial discovery in this lawsuit, as reflected in Scott Rothenberg's motion for the imposition of death penalty sanctions, and otherwise in the file of this lawsuit. Accordingly, the Court ORDERS that at time of trial, Robert Primo is precluded from presenting evidence or arguments opposing Scott Rothenberg's claims for attorneys' fees to collect attorneys' fees, and for the recovery of exemplary damages. This sanction is ordered pursuant to Texas Rule of Civil Procedure 215.2(b)(4) as a result of Robert Primo's refusal to answer the deposition questions set forth above, and is ordered in light of Robert Primo's history of repeatedly violating this Court's orders pertaining to pretrial discovery in the above-captioned and numbered lawsuit.

Rothenberg then objected to the trial court considering all exhibits to Primo's summary judgment response based upon the trial court's June 10, 2013 sanctions order. Rothenberg also objected to the trial court considering Meyer's affidavit because it is "conclusory, without proper factual support and methodological analysis, is based upon the bare *ipse dixit* of Meyer, and therefore, is of no legal effect."

Primo filed a "Motion to Strike Rothenberg's Evidence in Support of His Motion for Summary Judgment" on November 1, 2013. Primo argued that Rothenberg produced his fee report for the first time on October 2, 2013, but "has been in

25

possession of that evidence throughout the litigation and has failed to produce it in discovery despite numerous requests and his duty to supplement his responses." Primo argued that "Rothenberg's withholding of his invoices by 257 days after his Plaintiff's First Amended Petition filed on January 17, 2013[,] in which he claimed attorney's fees for the first time, completely dwarfs by nearly fourteen-fold" when compared to Primo's failure to produce the Briar Green indemnity suit record "merely 19 days after the expert designation." Primo also asked the trial court to strike Rothenberg's affidavit attached to his summary judgment motion as being conclusory and irrelevant.

On November 4, 2013, Primo filed a sur-reply in opposition to Rothenberg's summary judgment motion, arguing that (1) Rothenberg incorrectly equated a summary judgment proceeding to a trial; (2) Meyer's affidavit raised fact issues that Rothenberg's fees are unreasonable and unnecessary; (3) Meyer methodically developed every opinion he stated in his affidavit; (4) the June 10, 2013 sanctions order Rothenberg cited in his reply was irrelevant with regard to his summary judgment motion; and (5) the trial court's sanction pronounced in its June 10, 2013 order constitutes an abuse of discretion by the trial court.

## H.    The Trial Court's Grant of Traditional Summary Judgment

The trial court signed a "Final Judgment" in cause number 2012-68391 on November 5, 2013. In this judgment, the trial court (1) incorporated language from its June 10, 2013 sanctions order; (2) stated that Primo filed a writ of mandamus regarding the trial court's June 10, 2013 sanctions order "but received no relief . . . whatsoever;" (3) stated that a summary judgment is considered to be a trial under Texas law; (4) sustained Rothenberg's objection to Primo's evidence attached to Primo's response to Rothenberg's summary judgment motion and struck Primo's evidence; (5) sustained Rothenberg's objection to the trial court considering Meyer's affidavit as evidence because the affidavit is "conclusory, without proper factual support and methodological

analysis, [and] relies upon the bare *ipse dixit* of Meyer;" (6) concluded that "there are no genuine issues of material fact, and that Rothenberg is entitled to judgment as a matter of law;" and (7) ordered that Rothenberg recover $148,100 in "reasonable attorney's fees" from Primo under chapter 38 for "professional legal services performed in the trial court and in the courts of appeals up through October 2, 2013," as well as attorney's fees in the event Primo unsuccessfully pursues appellate relief.

Primo timely filed a notice of appeal in cause number 2012-68391 on November 6, 2013, appealing the trial court's "Final Judgment" of November 5, 2013.

## ANALYSIS

We first address the parties' arguments in cause number 14-13-00794-CV regarding the propriety of (1) a no-evidence summary judgment on Primo's affirmative defenses and counterclaims; and (2) death penalty sanctions imposed against Primo. Next, we address the parties' arguments in cause number 14-13-00997-CV regarding the propriety of a traditional summary judgment in favor of Rothenberg on his claim to recover additional attorney's fees incurred in litigating the initial $57,999.63 fee dispute.

### Appeal in Cause No. 14-13-00794-CV

## I. No-Evidence Summary Judgment on Primo's Affirmative Defenses and Counterclaims

We begin by focusing on Primo's second issue challenging the trial court's grant of Rothenberg's no-evidence summary judgment motion. We focus on this order first because the no-evidence summary judgment was signed before the imposition of death penalty sanctions. By its terms, the no-evidence summary judgment order does not reference or depend on the propriety of death penalty sanctions imposed against Primo.

Primo argues that the trial court "abused [its] discretion" by signing an order granting Rothenberg's no-evidence summary judgment motion on May 13, 2013,

because (1) doing so violated a docket control order; (2) Rothenberg's motion was "legally insufficient;" (3) the trial court improperly struck Primo's summary judgment evidence; and (4) Primo "brought forth immensely more than a scintilla of competent evidence."

## A.    Standard of Review

We review a summary judgment *de novo*.  *Duerr v. Brown*, 262 S.W.3d 63, 68 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).  In a no-evidence summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the non-movant bears the burden of proof at trial.  Tex. R. Civ. P. 166a(i).  We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact.  *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact.  *Id*.  On the other hand, more than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions based on the evidence.  *Id*.  To raise a genuine issue of material fact, the evidence must exceed mere suspicion.  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).  "Evidence that is so slight as to make any inference a guess is in legal effect no evidence."  *Id*.  A party may move for a no-evidence summary judgment after an adequate time for discovery has passed.  *Id*.

## B. Timing of Motion

Primo first argues that the trial court violated its docket control order when it heard Rothenberg's no-evidence summary judgment motion before the deadline for hearing dispositive motions and pleas. According to Primo, the docket control order "expressly states" that Rule 166a(i) motions could not be heard before June 10, 2013.

Primo's contention is incorrect. The docket control order states: "If subject to interlocutory appeal, dispositive motions or pleas must be heard by" June 10, 2013. The docket control order sets no deadline for the trial to hear "Summary Judgment motions not subject to an interlocutory appeal" or "Rule 166a(i) motions." Accordingly, the trial court did not violate its docket control order, and we overrule Primo's issue in that regard.

Primo also argues that the trial court improperly granted Rothenberg's no-evidence summary judgment motion because Primo had inadequate time for discovery. In his response to Rothenberg's no-evidence summary judgment motion, Primo argued that he did not have adequate time for discovery. Primo argued that Rothenberg's "[m]otion must be denied and/or continued until such time as discovery is complete in this matter." Primo withdrew this complaint in his sur-response to Rothenberg's no-evidence summary judgment motion. Primo stated: "[Primo] withdraws his objection as to the improper timing of [Rothenberg's] Motion as there is ample evidence presented even in the face of Rothenberg['s] numerous antics as to press for summary judgment . . . ."

Having withdrawn his objection to the timing of Rothenberg's no-evidence summary judgment motion, Primo cannot contend on appeal that he had inadequate time for discovery. We overrule Primo's issue in that regard.

## C. Sufficiency of Motion

Primo contends that Rothenberg's motion was "legally insufficient" because it "challenged 72 no-evidence 'items'" that do "not constitute essential elements and do not state the cause of action they purport to attack the elements of." Primo nonetheless concedes on appeal that, of the "72 items," at least 19 can be "matched to an actual essential element of a cause of action pleaded by [Primo]." In light of this concession, we cannot conclude that the no-evidence summary judgment motion was insufficient for failure to challenge elements of causes of action Primo pleaded in this case. We overrule Primo's issue in this regard.

## D. Summary Judgment Evidence

Primo further argues that the trial court "abused its discretion" by striking his summary judgment evidence "en masse" because (1) there were "no procedural defects" in Primo's summary judgment evidence; (2) Rothenberg's objections to Primo's summary judgment evidence were not sufficiently specific; and (3) the evidence Primo attached to his no-evidence summary judgment response was based on well-established methodology, was not conclusory, and did not constitute hearsay.

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion. *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 568 (Tex. App.—Amarillo 2013, pet. denied); *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.). When a party fails to object to the trial court's ruling sustaining an objection to his summary judgment evidence, he has not preserved the right to complain on appeal about the trial court's ruling. *Montenegro*, 419 S.W.3d at 568; *Cantu*, 195 S.W.3d at 871; *cf. Gulley v. Davis*, 321 S.W.3d 213, 218 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

Because Primo failed to object to the trial court's ruling sustaining Rothenberg's objection to Primo's summary judgment evidence, he has not preserved the right to complain on appeal about the trial court's ruling. We overrule Primo's evidentiary complaint.[4]

### E.     Sufficient Probative Evidence

Primo also contends that the trial court erred "by granting no-evidence summary judgment when [Primo] brought forth immensely more than a scintilla of competent evidence."

Primo's brief sets out the standard for reviewing a no-evidence summary judgment on appeal. Primo's brief then asserts in conclusory fashion that "[i]t is clear that [Primo] brought forth more than a scintilla of probative evidence free of procedural defects or any contradiction." Primo's brief neither cites nor identifies any specific summary judgment evidence attached to his response to raise a genuine issue of material fact. Primo's brief does not explain how his summary judgment evidence raises a genuine issue of material fact with respect to the 19 elements Rothenberg challenged in his no-evidence summary judgment motion. Thus, Primo's issue presents nothing for our review. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 842 (Tex. App.—Dallas 2008, no pet.); *Hope's Fin. Mgmt. v. Chase Manhattan Mortg. Corp.*, 172 S.W.3d 105, 107-08 (Tex. App.—Dallas 2005, pet. denied).

---

[4] Even if Primo had preserved a meritorious complaint for appellate review, a successful challenge would have been inconsequential in light of Primo's failure to explain in his appellate brief how his summary judgment evidence raised a genuine issue of fact on any of the elements Rothenberg attacked in his no-evidence summary judgment motion. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

We overrule Primo's challenges to the trial court's grant of Rothenberg's no-evidence summary judgment motion in issue two.[5]

## II.   Death Penalty Sanctions

We now turn to Primo's first issue contending that the trial court abused its discretion when it acted to "impose death penalty sanctions, default judgment, strike testifying expert witness designation, and prohibit future pleadings in the absence of prior lesser sanctions; absence of any prejudice; absence of bad faith or flagrant disregard; absence of delays or burdens on the court system; or absence of any direct nexus between the conduct and the sanction imposed."

Both the motion for death penalty sanctions and the order granting death penalty sanctions for discovery abuse refer only to Texas Rule of Civil Procedure 215.2(b). The appellate briefing does not refer to any other rule under which the trial court granted sanctions for discovery abuse. Therefore, we focus on Rule 215.2(b) in analyzing the propriety of death penalty sanctions.

---

[5] We reject Primo's additional contention that the trial court abused its discretion by issuing "a void order of summary judgment on claims already adjudicated by sanction." Primo argues that, after the trial court "issued" an "oral order on the record in open court" granting Rothenberg's death penalty sanctions motion, the trial court had no jurisdiction to sign its order granting Rothenberg's no-evidence summary judgment motion on all of Primo's counterclaims and affirmative defenses. We note that the May 13, 2013 order granting a no-evidence summary judgment makes no reference to sanctions. The May 13, 2013 order recites that the trial court considered Rothenberg's no-evidence summary judgment motion; the order does not recite that the trial court considered Rothenberg's separately filed motion for death penalty sanctions. The subsequent sanctions order signed on May 22, 2013, recites that the trial court already had signed an order granting a no-evidence summary judgment on May 13, 2013, with respect to Primo's affirmative defenses and counterclaims. Primo does not explain how the timing and content of the May 13, 2013 no-evidence summary judgment order and the May 22, 2013 sanctions order implicate the trial court's subject matter jurisdiction. We discern no jurisdictional impediment based on these orders. In any event, Primo does not cite any authority in support of his argument that the trial court abused its discretion by "re-dismiss[ing] claims already dismissed." *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We overrule Primo's third issue.

Before addressing Primo's contentions, we outline the applicable standard of review and law governing an inquiry into whether the trial court's sanctions were "manifestly unjust and excessive."

## A. Standard of Review and Governing Principles

Discovery sanctions serve three legitimate purposes: (1) securing compliance with the rules; (2) deterring abuse; and (3) punishing abuse. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). We review a trial court's imposition of sanctions for an abuse of discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). "The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's actions, but 'whether the court acted without reference to guiding rules and principles.'" *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). The ruling will be reversed only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id*. at 839.

"In conducting our review, we are not limited to a review of the 'sufficiency of the evidence' to support the trial court's findings; rather, we make an independent inquiry of the entire record to determine if the court abused its discretion by imposing the sanction." *Elgohary v. Tex. Workforce Comm'n*, No. 14-09-00108-CV, 2010 WL 2326126, at *4 (Tex. App.—Houston [14th Dist.] June 10, 2010, no pet.) (mem. op.); *see Am. Flood Research, Inc.*, 192 S.W.3d at 583 ("In reviewing sanctions orders, the appellate courts are not bound by a trial court's findings of fact and conclusions of law; rather, appellate courts must independently review the entire record to determine whether the trial court abused its discretion."). An appellate court looks at the entire record, including any evidence, arguments of counsel, the written discovery on file, and the circumstances surrounding the party's alleged discovery abuse. *Johnson v.*

33

*Chesnutt*, 225 S.W.3d 737, 741 (Tex. App.—Dallas 2007, pet. denied); *Butan Valley, N.V. v. Smith*, 921 S.W.2d 822, 827 (Tex. App.—Houston [14th Dist.] 1996, no writ).

Rule 215.2(b) lists the sanctions a court may impose. They include: (1) disallowing any further discovery of any kind; (2) charging all or a portion of the expenses of discovery against the disobedient party; (3) determining designated facts shall be taken to be established; (4) refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting designated evidence from being introduced into evidence; (5) striking pleadings or parts thereof, staying the action until the order is obeyed, dismissing the action with or without prejudice, or rendering judgment by default; (6) imposing a contempt order; and (7) requiring the disobedient party to pay reasonable expenses, including attorney's fees, caused by the sanctionable conduct. Tex. R. Civ. P. 215.2(b).

*TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991), announced a two-part test for courts to apply when determining whether a sanction is "just."

First, there must be a direct nexus among the offensive conduct, the offender, and the sanction imposed. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (citing *TransAmerican*, 811 S.W.2d at 917). A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. *Id*.

Second, just sanctions must not be excessive. *TransAmerican*, 811 S.W.2d at 917. "When discussing excessiveness, [the supreme court has] said that 'the punishment should fit the crime' and that the sanction 'should be no more severe than necessary to satisfy its legitimate purposes.'" *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 187 (Tex. 2012) (quoting *TransAmerican*, 811 S.W.2d at 917). "Moreover, discovery sanctions are primarily intended to remedy discovery abuse and

34

should be tailored to serve their remedial purpose." *Id*. For this reason, the supreme court requires courts to consider less stringent sanctions and whether such lesser sanctions would fully promote compliance. *TransAmerican*, 811 S.W.2d at 917; *see also Cire*, 134 S.W.3d at 839; *Spohn Hosp.*, 104 S.W.3d at 882.

The imposition of severe sanctions is further limited by constitutional due process. *TransAmerican*, 811 S.W.2d at 917. "When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery." *Id*. at 918. "'[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause.'" *Id*. (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 209-10 (1958)). Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *TransAmerican*, 811 S.W.2d at 918; *GTE Commc'n Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993). "Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *TransAmerican*, 811 S.W.2d at 918.

Death penalty sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules. *Cire*, 134 S.W.3d at 840; *Tanner*, 856 S.W.2d at 729. A trial court "must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed;" thus, a trial court is "required to consider the availability of lesser sanctions before imposing death penalty sanctions." *Cire*, 134 S.W.3d at 840 (citing *Tanner*, 856 S.W.2d at 729). And, in all

but the most egregious and exceptional cases, a trial court is "required to test the effectiveness of lesser sanctions by actually implementing and ordering each sanction that would be appropriate to promote compliance with the trial court's orders in the case." *Id.* at 842 (citing *Chrysler*, 841 S.W.2d at 849).

## B.     Waiver

As a threshold matter, we address Rothenberg's arguments that death penalty sanctions should be affirmed summarily because Primo failed to (1) provide this court with a complete record or a statement of points; and (2) challenge on appeal the trial court's September 16, 2013 order, in which the trial court "reconsidered" its original death penalty sanctions order signed on May 22, 2013, and again imposed death penalty sanctions.

### 1.     Incomplete record

Rothenberg invokes a presumption that omitted portions of the reporter's record are relevant and support the trial court's sanctions order. *See* Tex. R. App. P. 34.6. Rothenberg states that Primo failed to provide this court with a reporter's record of hearings held on August 19, 2013, August 26, 2013, and September 16, 2013; Rothenberg also asserts that Primo failed to include in the clerk's record Rothenberg's "written supplement to [his] January, 2013, motion to compel production, Primo's motion to recuse Judge McFarland, and Judge Underwood's written order overruling Primo's motion to recuse."[6] According to Rothenberg, "Primo's failure to bring forth a record of all proceedings in the case makes it unnecessary for this Court to wade deeply into the contentious proceedings in the trial court below."

Primo responds that the presumption does not apply when the only omission from

---

[6] Primo asserts that his motion to recuse the trial judge was filed in cause number 2012-68391 after severance on July 12, 2013. Rothenberg does not dispute Primo's assertion.

the reporter's record is non-evidentiary; he asserts that the trial court hearings held on August 19, 2013, August 26, 2013, and September 16, 2013, were non-evidentiary.

We disagree with Rothenberg's assertion that death penalty sanctions can be affirmed based on a presumption that omitted portions of the reporter's record are relevant and support the trial court's action. Rothenberg's briefing as the appellee did not dispute that the hearings held on August 19, 2013, August 26, 2013, and September 16, 2013, were non-evidentiary.[7] "When evidence is not submitted at a hearing, there are no factual resolutions to presume in the trial court's favor." *Butan Valley*, 921 S.W.2d at 828. Based on this precept, this court has rejected an appellee's argument that a trial court's sanctions order should be affirmed because the appellant failed to produce a reporter's record for three non-evidentiary hearings. *Id*. "Consequently, the record we have before us is sufficient for us to determine if the trial court acted properly in imposing sanctions." *Id*.

Additionally, although Rothenberg states that Primo failed to include in the

---

[7] On rehearing, Rothenberg contends that the September 16 hearing was evidentiary because exhibits were offered into evidence during that hearing. Rothenberg does not contend that the August 19, 2013 and August 26, 2013 hearings were evidentiary. In support of his contention that the September 16, 2013 hearing was evidentiary, Rothenberg cites a motion filed by Primo in this court on September 2, 2014. Primo's motion in this court sought to supplement the record on appeal with a copy of the September 16, 2013 hearing transcript. Rothenberg opposed supplementation in a response filed in this court on September 12, 2014. This court denied supplementation on September 18, 2014. In his motion to supplement the record on appeal, Primo represented that no live testimony was presented at the September 16, 2013 hearing; he also represented that Rothenberg offered 23 exhibits into evidence at the same hearing. According to the September 16, 2013 hearing transcript submitted to this court in conjunction with the motion to supplement, Rothenberg told the trial court at the September 16, 2013 hearing that the 23 exhibits "are the exhibits that were attached to my Motion for Death Penalty Sanctions and the associated papers. They are exactly the same as what's on file." The trial court recited its understanding that these exhibits "all came out of the Court's record – they're all out of the Court's file." Rothenberg responded to the trial court's statement as follows: "Exhibits A through M is [sic] the exhibits that were attached to the Motion for Death Penalty Sanction. And then N through X are the exhibits and other papers from the two motions that I filed for the additional findings. There are no different papers." We do not believe that application of the presumption under Texas Rule of Appellate Procedure 34.6(c)(4) is warranted when the supposedly omitted evidence already appears elsewhere in the appellate record.

clerk's record a "written supplement" to Rothenberg's January motion to compel, Rothenberg does not state what this written supplement contains or how it pertains to the imposition of death penalty sanctions against Primo. We note that the presumption being invoked here applies to the reporter's record. *See* Tex. R. App. P. 34.6(c)(4) ("The appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues. This presumption applies even if the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in that point or issue."). We do not suggest that Rule 34.6(c)(4) applies to items omitted from a clerk's record.

We reject Rothenberg's contention that a presumption compels us to affirm the death penalty sanctions against Primo.

### 2. September 16, 2013 "Additional Findings of Fact and Conclusions of Law"

Rothenberg further argues that Primo's asserted failure to challenge on appeal the trial court's "Additional Findings of Fact and Conclusions of Law" signed on September 16, 2013, in which the trial court "reconsidered" its original death penalty sanctions order signed on May 22, 2013, and reimposed them, requires us to affirm the trial court's imposition of death penalty sanctions. Rothenberg contends that Primo "irrevocably waived" any complaint about the trial court's imposition of death penalty sanctions "by failing to attack in any manner the [trial] court's September 16, 2013 written order reconsidering her prior granting of case-dispositive sanctions in light of the additional evidence and proceedings addressed in the written order."

Primo argues that he was not required to attack the September 16, 2013 order because it did not pronounce any new rulings and expressly stated that the trial court's May 22, 2013 order "shall stand without any change whatsoever."

38

We disagree with Rothenberg's assertion that Primo forfeited his right to challenge the trial court's imposition of death penalty sanctions against him.

In addressing this waiver assertion, we begin by reviewing the timing of events in the trial court. The severance order signed on June 10, 2013, created a final and appealable judgment in trial court cause no. 2012-6839-A. Primo timely filed a motion for new trial in the "A" case on July 10, 2013; this filing extended the trial court's plenary power to modify the judgment until 30 days after the date on which the motion for new trial was overruled by written order or operation of law. *See* Tex. R. Civ. P. 329b(e). The trial court signed a written order in the "A" case overruling Primo's motion for new trial on August 19, 2013.

While the trial court still had plenary power, Rothenberg filed a request for additional findings of fact and conclusions of law in support of death penalty sanctions on August 27, 2013. Primo filed a notice of appeal on September 6, 2013, in which he identified the May 22, 2013 order as one of the matters being appealed.

The trial court signed "Additional Findings of Fact and Conclusions of Law" on September 16, 2013, in conformity with Rothenberg's request and while it still had plenary power to do so. Among other things, the September 16, 2013 "Additional Findings of Fact and Conclusions of Law" order incorporates by reference all of the "numerous and serious violations by Robert Primo of the Texas Rules of Civil Procedure pertaining to pretrial discovery" that were described as the basis for death penalty sanctions in the trial court's May 22, 2013 order. The September 16, 2013 "Additional Findings of Fact and Conclusions of Law" order also identifies three instances of additional misconduct by Primo occurring after May 22, 2013, which pertained to (1) producing a transcript and video of John Irvine's deposition; (2) representations made to the trial court at an August 19, 2013 hearing; and (3) demonstrating contempt for the court. The September 16, 2013 "Additional Findings of

Fact and Conclusions of Law" order reaffirms the imposition of death penalty sanctions based on the totality of (1) Primo's discovery conduct identified in the May 22, 2013 order, which is incorporated into the September 16, 2013 order; and (2) the three additional instances of Primo's conduct identified for the first time in the September 16, 2013 order.

Although Primo filed his notice of appeal in the "A" case ten days before the trial court signed its September 16, 2013 order reaffirming the imposition of death penalty sanctions, Rothenberg does not expressly contend that notice of appeal is ineffective or that this court lacks appellate jurisdiction – and appropriately so. *See* Tex. R. App. P. 27.3 ("After an order or judgment in a civil case has been appealed, if the trial court modifies the order or judgment, or if the trial court vacates the order or judgment and replaces it with another appealable order or judgment, the appellate court must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the subsequent order or judgment."); *see also Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 925 (Tex. 2011) ("[W]e treat Roccaforte's appellate complaints about the trial court's grant of the County's jurisdictional plea as though they related to the appeal of the final judgment."); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 633-34 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (appeal from earlier final judgments treated as appeal from later, modified judgment).

Insofar as Rothenberg contends that Primo's briefing does not adequately assail the September 16, 2013 order, we disagree. As framed in his opening brief in appellate cause number 14-13-00794-CV, Primo's first issue presented broadly asserts that the trial court abused its discretion by imposing death penalty sanctions. Primo discusses specific findings in the May 22, 2013 order; because these findings also were incorporated wholesale into the September 16, 2013 order, this discussion likewise

40

addressed the basis for death penalty sanctions set forth in the subsequent order. The additional discussion in Primo's brief sweeps broadly enough to encompass all bases upon which the trial court imposed death penalty sanctions, including those added in the September 16, 2013 order.

We now turn to the merits of whether death penalty sanctions are appropriate on this record.

### C.     Propriety of Death Penalty Sanctions

The "Order and Interlocutory Judgment" signed on May 22, 2013, and subsequently incorporated into the Additional Findings of Fact and Conclusions of Law signed on September 16, 2013, is a death penalty sanctions order. It precludes any defense of Rothenberg's claim for the initial $57,999.63 in attorney's fees, and renders judgment in favor of Rothenberg in that amount.

Primo argues that the trial court abused its discretion by imposing "manifestly unjust and excessive sanctions" against him without first considering or testing lesser sanctions. Primo argues that death penalty sanctions were not warranted because the trial court signed only one order to compel discovery before imposing death penalty sanctions. Primo further contends that there is no evidence of a "history of chronic non-compliance," bad faith, or "flagrant disregard for the responsibilities of discovery under the rules." According to Primo, he timely supplemented discovery requests "within a short time and before the discovery deadline."

Primo also contends that Rothenberg did not incur monetary expenses or suffer prejudice from Primo's failure to produce the indemnity trial transcript or other discovery. Primo contends that Rothenberg (1) did not seek a continuance in order to remedy the alleged disadvantage caused by delay in producing the reporter's record from the indemnity trial; (2) never named an expert who declined to serve as an expert

because of the transcript delay; (3) made "no assertion that his own designation [as expert] is inferior;" and (4) had superior knowledge of the indemnity trial because he represented Primo at trial. Primo notes that the docket control order does not contain a deadline for challenging experts; either party could have challenged an expert any time before trial.

Rothenberg responds that Primo failed to attack findings of fact 51 and 52 of the May 22, 2013 order; the trial court found that Primo improperly withheld the indemnity trial reporter's record until after the expert witness deadline expired on April 16, 2013, and that this delay was a deliberate act by Primo to force "Rothenberg to the choice of going to trial not fully prepared, or requesting a trial continuance, which Rothenberg has opposed in this case." He further argues that the evidence in this case supports the trial court's finding that "Primo's hindrance of the discovery process was so multifarious, so persistent and so determined as to warrant the presumption that [Primo]'s claims had no merit; otherwise he would have fully responded to discovery." Rothenberg contends that the unreliable and conclusory nature of Primo's expert report further warrants a finding that Primo's claims and defenses lacked merit.

According to Rothenberg, the "case dispositive sanctions issued by the trial court fit Primo's improper pattern of conduct and were not excessive" because, without timely responses to the court-ordered pretrial discovery, "it was impossible" for Rothenberg to prepare his causes of action and defenses to Primo's counterclaims on a timely basis. Rothenberg further argues that Primo never fully supplemented his discovery responses as ordered, and a belated supplementation after the expiration of Rothenberg's expert witness designation deadline was insufficient to undo the prejudice caused by Primo's failure to timely respond to discovery requests.

We do not condone Primo's conduct or suggest it was an abuse of discretion to conclude that Primo's conduct warranted sanctions. We nonetheless conclude that the

42

trial court's imposition of death penalty sanctions in the first instance, and without first considering or testing lesser sanctions, constituted an abuse of discretion under the circumstances present here.

The trial court granted Rothenberg's motion to compel after Primo did not fully answer all discovery requests, and ordered Primo to fully answer interrogatories and requests for production by February 15, 2013. In his first supplemental responses to Rothenberg's first discovery request filed on February 15, 2013, Primo (1) provided detailed answers to Rothenberg's Interrogatories Nos. 1, 3, and 6 through 12; (2) responded to Interrogatory No. 2 that he had not pleaded a DTPA claim yet; (3) responded to Interrogatory No. 5 that he intended to file a grievance against Rothenberg with the State Bar of Texas and listed several ethics rules he believed Rothenberg violated; (4) responded to Interrogatory No. 13 that he "will designate expert(s) when their review is complete and report made available and the expert made available for discovery;" and (5) responded to Rothenberg's eight requests for production by providing an internet address for an "uploaded file."

At a March 11, 2013 hearing, the trial court orally ordered Primo to produce the indemnity trial reporter's record to Rothenberg by March 31, 2013. Primo did not produce the record as ordered; it was not provided until May 6, 2013. To Rothenberg's second set of interrogatories and second request for production, Primo responded by objecting to the three interrogatories as being excessive in number and by objecting to the indemnity trial record request on the ground that the record is the court reporter's work product that is "easily available" from the court reporter.

No monetary sanctions were requested. Instead, Rothenberg filed a motion for death penalty sanctions or, alternatively, a motion to compel on May 3, 2013. Primo responded to Rothenberg's motion and attached two exhibits to his response on May 10, 2013. One exhibit contained Primo's second supplemental responses to Interrogatory

43

No. 2 and No. 13 to Rothenberg's first set of interrogatories. The other exhibit contained supplemental responses to Rothenberg's second request for production, in which Primo claimed he produced all documents he referenced in his supplemental responses, and produced the indemnity trial reporter's record. Primo previously attached the indemnity trial reporter's record as part of his no-evidence summary judgment response on May 6, 2013.

During the hearing on Rothenberg's death penalty sanctions motion, the trial court did not consider imposing lesser sanctions or indicate why lesser sanctions would not be effective to secure Primo's compliance with discovery requests, deter further non-compliance with discovery requests, and punish Primo. In its May 22, 2013 death penalty sanctions order, the trial court did not explain why lesser sanctions against Primo would have been ineffective and did not indicate that the court considered imposition of lesser sanctions before imposing the most severe sanctions. *See Cire*, 134 S.W.3d at 842; *Tanner*, 856 S.W.2d at 729.

The trial court's May 22, 2013 order states that Primo committed discovery abuse when he (1) made frivolous objections to three interrogatories in Rothenberg's second set of interrogatories on the ground that the number of interrogatories was excessive, and objected to producing the indemnity trial record because the record was the court reporter's work product and was "easily available from" the court reporter; (2) did not produce documents in written form in response to Rothenberg's first eight requests for production, and instead provided an internet address at which Rothenberg could access the stored documents, because "this form of responding to a request for production is not authorized by the Texas Rules of Civil Procedure;" (3) responded to Interrogatory No. 13 that he "will designate expert(s) when their review is complete and report made available" because this response was not complete and specific; (4) failed to timely supplement his response to Interrogatory No. 2 in Rothenberg's first set of

interrogatories after he pleaded a DTPA claim on April 1, 2013; (5) responded to Interrogatory No. 5 that he intended to file a grievance against Rothenberg because this response does not "provide factual information sought" in Interrogatory No. 5; and (6) "improperly withheld" the indemnity trial reporter's record "until after the April 16, 2013 expiration of Rothenberg's expert witness designation deadline" because "Primo's refusal to produce the [] record was a deliberate act on his part designed to put Rothenberg to the choice of going to trial not fully prepared, or requesting a trial continuance, which Rothenberg has opposed in this case."

The trial court's order also states that the "most egregious" of Primo's abuses was the withholding of the indemnity trial record until May 6, 2013, which denied Rothenberg the opportunity to "review the materials that Primo's testifying expert witness reviewed in formulating his opinions in this case;" "to do a full Daubert challenge to the relevance and reliability of Primo's testifying expert witnesses opinions;" and "to timely designate one or more expert witnesses."

The trial court did not consider lesser sanctions before imposing death penalty sanctions. *See Cire*, 134 S.W.3d at 842; *Tanner*, 856 S.W.2d at 729. A variety of lesser sanctions were available to secure Primo's compliance with discovery requests; deter him from further non-compliance; punish him for past non-compliance; and, most importantly, remedy any prejudice caused to Rothenberg because of Primo's non-compliance. *See* Tex. R. Civ. P. 215.2. Rothenberg has not cited any case in which conduct similar to Primo's was found to warrant imposition of death penalty sanctions without first considering or testing lesser sanctions. We have located no such case through our own research.

The result here is not changed by the additional findings of fact and conclusions of law contained in the September 16, 2013 order.

In the September 16, 2013 order, the trial court found that Primo (1) had

45

possession of attorney John Irvine's deposition transcript and video for several weeks but failed to produce it after Rothenberg requested production in June and July 2013 because he knew that Irvine's testimony was damaging to his "groundless" allegations against Rothenberg; (2) made false representations to the court at an August 19, 2013 hearing; and (3) demonstrated contempt for the trial court.

The September 16, 2013 order concludes that (1) Primo's wrongful conduct before and after the imposition of death penalty sanctions on May 22, 2013, is "sufficient to convince the Court that no lesser sanction than a case dispositive sanction would have been sufficient to obtain" Primo's compliance with pretrial discovery rules; and (2) Primo's conduct after the imposition of death penalty sanctions "further establishes that lesser sanctions would have been ineffective in obtaining . . . Primo's compliance with the Texas Rules of Civil Procedure" and the trial court's discovery orders. The trial court reaffirms its May 22, 2013 order, and states that it is "necessary and proper," "complies with due process," and "shall stand without any change whatsoever."

We conclude that the September 16, 2013 order does not remedy the failure to consider lesser sanctions as reflected in the May 22, 2013 order. The compliance, deterrence, and punishment rationales that undergird discovery sanctions are not promoted by a procedure that allows death penalty sanctions to be levied because the sanctioned litigant failed to cooperate after death penalty sanctions were levied. *See Chrysler*, 841 S.W.2d at 849. Re-hanging an already-hung litigant does not fix procedural flaws preceding the first trip to the gallows and does not comply with *TransAmerican*. *See TransAmerican*, 811 S.W.2d at 917-18.

Like its predecessor, the September 16, 2013 order fails to effectively "analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed" as required before imposing the most severe sanctions possible. *See*

46

*Cire*, 134 S.W.3d at 840.

Based on our review of the record, we conclude that Primo's inappropriate conduct does not make this an exceptional case in which death penalty sanctions are justified in the first instance. *See Spohn Hosp.*, 104 S.W.3d at 882. We conclude that the trial court abused its discretion by assessing death penalty sanctions as an initial sanction without appropriately considering or testing lesser sanctions. Even when the record reflects intentional discovery abuse, as it does here, the trial court is still required to explain that it considered lesser sanctions before imposing sanctions precluding a party's ability to present the merits of its claims.

Unlike *Cire*, the circumstances here do not involve the deliberate destruction of dispositive evidence. *See Cire*, 134 S.W.3d at 840-42 ("This is an exceptional case where it is fully apparent and documented that no lesser sanctions would promote compliance with the discovery rules, and the trial court did not abuse its discretion in striking [party]'s pleadings."). The circumstances here more closely track cases in which death penalty sanctions were inappropriate because lesser sanctions were not first considered or tested. *See Spohn Hosp.*, 104 S.W.3d at 882 (trial court's sanctions were unjust and excessive because "the record is silent regarding the consideration and effectiveness of less stringent sanctions"); *Tanner*, 856 S.W.2d at 729 ("[t]he record must reflect that the court considered the availability of lesser sanctions" and "the order which the district court signed stated that lesser sanctions would have been ineffective, but the court did not explain why and the record does not indicate why"); *Chrysler Corp.*, 841 S.W.2d at 849 ("a court must consider relatively less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse"); *TransAmerican*, 811 S.W.2d at 917 (death penalty sanctions excessive where "there is nothing in the record to indicate that the district court considered imposition of lesser sanctions or that such sanctions would not have been

effective").[8]

We sustain Primo's first issue and reverse the trial court's grant of death penalty sanctions against Primo.[9]

## Appeal in Cause No. 14-13-00997-CV

We now address whether the trial court properly granted traditional summary

[8] *See also Khan v. Valliani*, 439 S.W.3d 528, 535-36 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (although Khan had several months to pay $400 as ordered by the trial court to compensate Valliani for having to prosecute a motion to compel and although "she had been warned at least once about the failure to do so, we cannot say that her behavior, even if done in flagrant bad faith warrants the severest of civil sanctions;" imposing death penalty sanctions was an abuse of discretion and the trial court "should have considered lesser sanctions, such as abating the case until the fee was paid, or including payment of the fee in a final judgment"); *Shops at Legacy (Inland) Ltd. v. Fine Autographs & Memorabilia Retails Stores, Inc.*, 418 S.W.3d 229, 235 (Tex. App.—Dallas 2013, no pet.) ("Without considering the merits of the allegedly sanctionable actions, we conclude the trial court erred when it assessed 'death penalty' sanctions against The Shops at Legacy because the record does not show the trial court considered and analyzed the availability of less stringent sanctions and whether such sanctions would fully promote compliance."); *In re M.J.M.*, 406 S.W.3d 292, 298 (Tex. App.—San Antonio 2013, no pet.) (despite litigant's "intentional and blatant" abuse of the discovery process for several months, the trial court abused its discretion by imposing death penalty sanctions without first testing or considering less stringent sanctions before imposing death penalty sanctions); *Gunn v. Fuqua*, 397 S.W.3d 358, 375 (Tex. App.—Dallas 2013, pet. denied) (trial court abused its discretion in imposing death penalty sanctions without considering less stringent sanctions despite evidence of litigant's dilatoriness in failing to designate experts, produce expert reports, and comply with scheduling orders); *Citibank, N.A. v. Estes*, 385 S.W.3d 671, 676-77 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The assessment of death penalty sanctions as an initial sanction, without explanation, is excessive."); *Mendez v. Sweeny Cmty. Hosp.*, No. 14-02-00843-CV, 2003 WL 21192136, at *3 (Tex. App.—Houston [14th Dist.] May 22, 2003, no pet.) (mem. op.) (death penalty sanction was excessive and trial court should have imposed a lesser sanction to address litigant's failure to answer questions in deposition and failure to respond to discovery requests after the trial court's oral order to comply); *In re Harvest Communities of Houston, Inc.*, 88 S.W.3d 343, 349 (Tex. App.—San Antonio 2002, orig. proceeding) (conditionally granting mandamus relief where trial court failed to adequately consider lesser sanctions before imposing death penalty sanctions for discovery abuse).

[9] In the "Issues Presented" section of his brief, Primo states as his fourth issue the following argument: "The trial judge abused [its] discretion to issue irrelevant findings of facts and conclusions of law on pleadings from other unadjudicated lawsuits not germane to the underlying case for legal malpractice. Such lawsuits were three generation levels removed from the underlying case, and never presented to a trier-of-fact in the underlying case or any other case." Primo discusses this argument as one of his sub-issues within his first issue. In light of our disposition of the first issue, we need not address Primo's fourth issue separately.

judgment in favor of Rothenberg on his claim to recover additional attorney's fees incurred in litigating his entitlement to the initial $57,999.63 fee.

Primo states in his brief: "As the underlying judgment is an award of attorney's fees for contract claims from that Severed Case[,] [i]n addition to all the defects in the underlying case itself, reversal of that improper adjudication in the Severed Case, on appeal in this Court, Cause No. 14-13-00794-CV, will also void the judgment in the underlying case, as without prevailing on the contract claim, there is no basis for award of attorney's fees."

Primo argues that the trial court erred by granting summary judgment because (1) the amount of additional attorney's fees should not have been adjudicated on summary judgment but through an evidentiary hearing; (2) Primo's expert affidavit raised a genuine issue of material fact that Rothenberg's fees are unreasonable and unnecessary, and Rothenberg is not a credible witness; (3) Rothenberg failed to segregate his fees; (4) a "claim for attorney's fees cannot be maintained independently in a separate lawsuit from the main claim for breach of contract/sworn account;" (5) Rothenberg failed to satisfy Civil Practice and Remedies Code section 38.001 to recover attorney's fees; (6) Rothenberg "forfeited his claim for attorney's fees in the underlying case" when he sought severance of his contract claim because the claim for attorney's fees cannot be independently maintained; (7) "*Res Judicata* bars Rothenberg's claim for attorney's fees in the underlying case;" and (8) there were no procedural defects in Primo's summary judgment evidence.

We need not address Primo's numerous challenges to this ruling because the trial court's traditional summary judgment awarding additional attorney's fees incurred in pursuing the initial $57,999.63 fee cannot stand in light of our reversal of the trial

49

court's imposition of death penalty sanctions against Primo.[10]

Rothenberg argued in his motion for traditional summary judgment that (1) the trial court's May 22, 2013 order and interlocutory judgment imposed death penalty sanctions against Primo and awarded Rothenberg $57,999.63 for his fee agreement claim against Primo; (2) the trial court "severed its interlocutory judgment in the amount of $57,999,63" on June 10, 2013, leaving as the only remaining issue "the amount of attorney's fees to be awarded to Scott Rothenberg for handling the prosecution and defense of all claims, demands and causes of action" in the lawsuit; and (3) Rothenberg was entitled to $148,100 in reasonable attorney's fees from Primo pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code "for professional legal services performed in the trial court and in the courts of appeals up through October 2, 2013." The trial court signed an order granting Rothenberg's traditional summary judgment motion on November 5, 2013.

Chapter 38 allows a prevailing party to recover reasonable attorney's fees in addition to the amount of a valid claim and costs if the claim is for a sworn account or an oral or written contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (7), (8) (Vernon 2008). "To recover attorney's fees under this statute, a party must first prevail on the underlying claim *and* recover damages." *In re Nalle Plastics Family Ltd.*, 406 S.W.3d 168, 173 (Tex. 2013) (emphasis in original).

The basis identified for entitlement to the underlying fees was the May 22, 2013 sanctions order. With the reversal of the death penalty sanctions and the underlying fee award of $57,999.63 as set out in the May 22, 2013 order, neither of these two prongs is satisfied. Accordingly, the trial court's traditional summary judgment in favor of

---

[10] We express no opinion regarding the propriety of seeking additional attorney's fees in the original trial court cause number after the underlying breach of contract claim was severed on June 10, 2013.

50

Rothenberg also must be reversed.

## CONCLUSION

In cause number 14-13-00794-CV, we affirm the trial court's judgment in part with respect to the trial court's grant of a no-evidence summary judgment. We reverse the trial court's judgment in part with respect to the trial court's imposition of death penalty sanctions. We remand for further proceedings not inconsistent with this court's opinion.

In cause number 14-13-00997-CV, we reverse the trial court's judgment with respect to Rothenberg's claim for additional attorney's fees incurred in litigating the initial $57,999.63 fee dispute as reflected in the "Final Judgment." We remand for further proceedings not inconsistent with this court's opinion.


/s/    William J. Boyce
Justice


Panel consists of Justices Boyce, Jamison and Donovan.